## Hackett *versus* Reynolds, Lamberton & Co.

Where a bank in one city as the agent to transmit, sends the draft or note of a third party to a bank in another city for collection, the collecting bank cannot on failure of its correspondent, without having made advances or given new credits on the faith of the draft or note, credit the proceeds of the draft or note to its account; but is liable to the owner of the draft or note therefor.

October 7th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas of *Venango county:* Of October Term 1886, No. 127.

This was an action of assumpsit brought by Thomas Hackett against J. B. Reynolds, R. Colbert and S. H. Lamberton, partners trading as Reynolds, Lambert & Co. Plea, non assumpsit, payment, set-off with leave.

The following are the facts as they appeared on the trial before TAYLOR, P. J.

On the 23d day of January, 1884, J. J. Fisher, of Oil City, Pa., made and delivered to the plaintiff, Thomas Hackett of Pittsburgh, Pa., his promissory note for $424.12, payable five months after date to the order of Thomas Hackett, for value received, with interest, at the Oil City Savings Bank, of Oil City, Pa.

In February, 1884, plaintiff placed the note in the Penn Bank of Pittsburgh, Pa., for collection, indorsing his name thereon in blank. On or about the 20th day of May, the Penn Bank forwarded the note to the defendants, Reynolds, Lamberton & Co., Bankers, at Oil City, Pa., "for collection," with directions to "return collections at once if not paid at maturity," as stated in the letter of remittance, dated May 20th and indorsed the note as follows: "Pay Reynolds, Lamberton & Co., for account of Penn Bank, Pittsburgh, Pa., G. L. Reiber, Cashier."

The defendants were their regular correspondents, and had been for several years; they kept mutual accounts; they collected for the Penn Bank and placed to its credit, and Penn Bank did the same for them.

On the 26th day of May, at noon, the Penn Bank failed and closed its doors; news of the failure was immediately tele-

graphed to Oil City, and made public, and the defendants heard of it. Mr. Lamberton, one of the defendants, and their cashier, after learning of the failure, after banking hours, about half past three o'clock of the same day, called on Fisher for payment of the note; the note not being due until June 6th. He could not pay but gave two notes, after being indemnified, of $217.77 each, at 30 and 60 days, to the cashier, in place of the note in question, and subsequently paid them when due. On or about the 31st of May, the note then being in defendants' possession, and also the two new notes, Mr. Hackett, the plaintiff, and also his attorney at another time, called on the defendants and notified them that the note belonged to him and demanded the note. They were informed that it was paid and credited to the Penn Bank, and he then demanded the note or the money. They refused to do either. Notice of the credit by mail came into the hands of the assignee, who made no claim to the note, and directed plaintiff to get it. On the 21st day of May, when defendants received the note, it appeared there was a balance of between $6,000 and $7,000 due from the Penn Bank to defendants, but it does not appear that there was any money advanced by defendants to the Penn Bank on the credit of this note or on any other account, or that the balance was in any way increased after plaintiff's note came into their hands.

The plaintiff presented the following points:—

1. That if the plaintiff, Thomas Hackett, being the owner of the note in question, which was made payable at the Oil City Savings Bank in Oil City, Pa., and became due on the 6th day of June, 1884, placed the same in the "Penn Bank" in Pittsburgh, Pa., for collection, and said Penn Bank transmitted the said note on or about the 21st day of May, 1884, to the defendants, Reynolds, Lamberton & Co., who were bankers in Oil City, Pa., and the regular correspondents of said Penn Bank for collection; and said Reynolds, Lamberton & Co., on the 26th day of May, 1884, received the money on said note, or received two other notes of said J. J. Fisher at 30 and 60 days, in payment, and said plaintiff on or about the 31st day of May 1884, demanded said note or the money alleged to have been collected thereon by said defendant, and they refused to pay the money or deliver the notes, the plaintiff is entitled to recover in this action.

2. That if the plaintiff in suit, being the owner of the note, which was payable at the Oil City Savings Bank in Oil City, Pa., and on interest, and became due on the 6th day of June, 1884, placed the note in the Penn Bank of Pittsburgh Pa., for collection and the same bank transmitted the same to the defendants, who were bankers in Oil City, Pa., as their agents or

[Hackett *v.* Reynolds, Lamberton & Co.]

correspondents for collection thereof, the said defendants, Reynolds, Lamberton & Co., became responsible to the plaintiff for the due presentation, demand and collection of said note, with interest thereon, when the same became due; and if the defendants failed to duly present, demand or accept other notes in payment thereof, and failed to pay the money received thereon when collected, or delivered the note to the plaintiff when duly demanded by him, the plaintiff is entitled to recover.

3. That upon all the evidence in this case the plaintiff is entitled to recover.

The court instructed the jury as follows in the general charge.

The plaintiff claims to recover the amount of a certain promissory note with interest. The note is dated January 3d, 1884, due five months after date, and made by John J. Fisher. The plaintiff indorsed this note in blank and delivered it to the Penn Bank of Pittsburgh, Pa., which sent the same about the 20th of May, 1884, to Reynolds, Lamberton & Co., the defendants. On the 26th of May, five days after the receipt of this note by the defendants, the Penn Bank closed its doors, and has remained insolvent ever since. On that same day, Mr. Fisher, the drawer of this note, made an arrangement with Reynolds, Lamberton & Co., through their cashier, by which he lifted this note which was not yet due, and had it put into two other notes, one at 30 days and the other at 60 days. There is no controversy, but these two notes were paid when due.

The plaintiff's theory of the case is that the Penn Bank having failed, they, the defendants, had no authority to transfer this note or divest any rights which he had in the note. That they received it from the Penn Bank and got the money on it, and he claims he is entitled to recover in this suit as he demanded it of the defendants.

The defendants say that for a long time prior to this transaction, there were mutual and extensive dealings between themselves and the Penn Bank, which was their correspondent at Pittsburgh, and they were its correspondent at Oil City; that when they received this note, it was received with four other accounts, and that they were in the habit of collecting notes endorsed as this was by the Penn Bank, and crediting it to the bank, and that had been their custom for many years; that in this transaction they did not know Mr. Hackett, and they had no reason to suppose anything else than the Penn Bank was the real owner of this note, so they made the arrangement with Mr. Fisher, you have heard detailed, and cancelled the original note, crediting its amount to the Penn Bank that was owing them at that time several thousand dollars. That is the defendants' theory of the case.

[Hackett *v.* Reynolds, Lamberton & Co.]

The testimony is entirely for you. There is but little controversy as to the testimony, but what little there is, it is your duty to reconcile it to say where you will give the verdict. (Fourth assignment of error.)

[We instruct you if you find from the weight of the evidence you deem creditable that for a number of years prior to May 26th, 1884, there had been mutual and extensive dealings, and an account current between the Penn Bank and Reynolds, Lamberton & Co's bank, in which they mutually credited each other with the proceeds of all paper remitted for collection, that accounts were regularly transmitted from one to the other and settled upon these principles, and upon the face of the paper transmitted it appeared to be the property of the respective bank (we may say to you that upon the face of this note it appeared to be the property of the Penn Bank, i. e. so far as the face itself shows) and to be remitted by them on its own account, and then Reynolds, Lamberton & Co., had notice that the Penn Bank was not the real owner of this note, then the plaintiff would be entitled to recover; or if you find that Reynolds, Lamberton & Co. did not give the Penn Bank *bona fide*, a credit for the amount, then the plaintiff would be entitled to recover if you find the dealings as before stated. On the contrary, if you find the state of dealings as first stated that Reynolds, Lamberton & Co., regarded the Penn Bank as the owner of the negotiable paper, which is transmitted for collection, and had no notice to the contrary, and upon the credit of such remittances made or remitted from time to time were suffered to remain in the hands of the Penn Bank to be met by the proceeds of such negotiable paper, and the defendant in good faith actually credited the amount of this note to the Penn Bank, then your verdict should be for the defendant. As you find these facts, so you will bring in your verdict.] (Fifth assignment of error.)

If you find for the plaintiff, your verdict should be for the amount of the note with interest from May 21st, 1884. If you find for the defendant, your verdict should be simply for the defendant.

[We have chosen to answer the plaintiff's and the defendant's points in our general charge on account of their length and lack of conciseness. So far as they are consistent with the charge they are answered in the affirmative; so far as inconsistent therewith, they are answered in the negative.] (First, second, third and sixth assignments of error.)

Verdict for the defendants and judgment thereon, whereupon the plaintiff took this writ and filed the assignments of error as above shown.

[Hackett *v.* Reynolds, Lamberton & Co.]

*William McNair*, for plaintiff in error.—This case is settled by First National Bank of Clarion *v.* Gregg, 29 P. F. S., 384.

Where a banker in one city acting as the agent to transmit, sends the draft or note of a third party in another city for collection, the collecting banker cannot·on failure of its correspondent, credit the proceeds of the draft or note to his account, but is liable therefor to the owner: Jones & Co. *v.* Millikin & Son, 5 Wright 252; Wilson & Co. *v.* Smith, 3 Howard, 763; McBrides *v.* Farmers Bank of Salem, 25 Barb., 657; Lawrence *v.* Stonington Bank, 6 Conn. 275; Merchants National Bank *v.* Goodman, 43 Leg. Int. of date 15th January, 1886.

*J. H. Osmer (R. G. Lamberton* and *E. H. Lamberton* with him), for defendant in error.—The single question in this case is whether, under all the evidence, the defendants below were justified in treating the note in question as the property of the Penn Bank.

The note sent was in the usual form of commercial paper, dated January 3d, 1884, and payable at five months from date to the order of Thomas Hackett.

It was indorsed by the payee in blank, and by him delivered to the Penn Bank. The Penn Bank indorsed this note as follows: "Pay Reynolds, Lamberton & Co. for account of Penn Bank of Pittsburgh, Pa., G. L. Reiber, Cashier."

The form of the indorsement by Hackett and the delivery of the note by him to the Penn Bank, was such a transfer of the note as was said by this court, in First National Bank of Clarion *v.* Gregg, 79 Pa. St., 336, to constitute such bank " the apparent owner of the note, and in the absence of notice of plaintiff's title, the defendant had the right to treat it as the real owner:" President and directors of the Bank of the Metropolis *v.* The President, Directors and Company of the New England Bank, 1 Howard, U. S., page 234; Same case, 6 Howard, U. S., page 212.

Mr. Justice CLARK delivered the opinion of the court November 1st, 1886.

Although the indorsement by Hackett was in blank, it is undisputed that he was the real owner of the note; that the Penn Bank received it for collection only, but remitted it to Reynolds, Lamberton & Co., as if it were the paper of the bank; the indorsement was:—"Pay S. H. Lamberton, cashier or order for account, Penn Bank, Pittsburgh; G. L. Reiber, cashier." We ·must also assume, for the verdict establishes the fact, that Reynolds, Lamberton & Co. had no notice whatever that the apparent relation of the Penn Bank to the paper was not its real relation to it; they had an undoubted right to

[Hackett v. Reynolds, Lamberton & Co.]

treat the Penn Bank as the actual owner of the note. If, therefore, they had purchased it for a valuable consideration or made advances upon it, or given new credit upon the faith of it, they would have been protected as *bona fide* holders or owners of the note.

But it is not alleged that Reynolds, Lamberton & Co. bought the note, or advanced, or gave credit upon it. It is contended, that there had been mutual dealings between the Penn Bank and Reynolds, Lamberton & Co.; that they had an account current between them, in which they credited each other with the proceeds of all paper remitted for collection; that their accounts were from time to time settled on these principles; that upon the credit of these remittances in their usual course of dealing, balances were suffered to remain in the Penn Bank, to be met by the proceeds of these remittances, and that the proceeds of the Hackett note were, in good faith, credited to the Penn Bank, under this course of dealing. The court instructed the jury, if this was so, their verdict should be for the defendant.

Upon an examination of the whole case we fail to find any evidence showing, or tending to show, that any balances were in point of fact suffered to remain, to be met by these remittances; and which, but for this course of dealing, would have been drawn. It does not appear for what particular purpose these balances were suffered to remain; we might as readily suppose they were kept for convenience, or to facilitate exchanges, or for both, or all these purposes, as for the purpose stated. Mr. Lamberton, the only witness who testifies on this subject, says in substance, that he is the cashier of the banking firm of Reynolds, Lamberton & Co., at Oil City; that the Penn Bank was their Pittsburgh correspondent, and made their collections in Pittsburgh, and that they did the same for the Penn Bank in Oil City; that mutual accounts were kept, in which each of the said banks gave credit to the other for collections made, respectively, and that this had been their custom for many years. He further states, that the Fisher note was paid on the 26th May, 1884; that the proceeds were placed to the credit of the Penn Bank in the usual course of business, and the credit was acknowledged to them on the same day; that after this credit was entered, there remained a balance of about $6,000 in favor of Reynolds, Lamberton & Co., against the Penn Bank. There is not the slightest evidence that this balance of $6,000 had been suffered to remain, upon the faith of, and to be met by remittances for collection from the Penn Bank.

We are of opinion, moreover, that if there had been evidence to this effect, in order to avail the defendants in this

[Hackett *v.* Reynolds, Lamberton & Co.]

case, it must be shown that the balances were suffered to remain upon the faith of remittances received, or under some circumstances perhaps, in process of transmission, and that Reynolds, Lamberton & Co., relying upon such remittances, actually did something or forbore to do something, by which their condition was worse than it would otherwise have been. To this extent, we are willing to follow the rule laid down in The Bank of the Metropolis *v.* Bank of New England, 1 Howard, 234; and 6 Howard 227. A purchaser or holder of a legally executed negotiable instrument can hold it against all claims and defenses, where he has acquired it, not only in good faith, but upon a valuable consideration; this, in Pennsylvania, is a rule of general application, equally binding upon banking companies, in their dealings with each other, as upon individuals. We cannot consent to the doctrine, that a mere usage and course of dealing between banks, in the transmitting of bills and notes for collection, by which they mutually credit the avails in account to overbalances due, can, without more, deprive a third person, the real owner of the notes or bills, of his rights.

The case is distinctly ruled by the First National Bank of Clarion *v.* Gregg, 29 P. F. S., 384; the language there employed by Mr. Justice WILLIAMS, when applied to the case under consideration, *mutatis mutandis*, expresses with the greatest clearness and accuracy the proper determination of this case.

The Penn Bank did not become the owners of the note by the plaintiff's indorsement and delivery of it to them for collection, and they had no right to pledge it, or direct its proceeds to be placed to their credit, in payment of their indebtedness to Reynolds, Lamberton & Co. It is true, that they were the apparent owners of the note, and, in the absence of notice of the plaintiff's title, Reynolds, Lamberton & Co., had the right to treat them as the real owners. If Reynolds, Lamberton & Co., had made advances or given new credits to the Penn Bank on the faith of the note, they would undoubtedly be entitled to retain the amount out of the proceeds; but just at this point the defense wholly fails. The testimony of the cashier does not show that Reynolds, Lamberton & Co., made any advances, or gave any new credits on the faith of the note; nor does it show that they incurred any liability or did anything by which their condition is worse than it would have been if they had not received the note for collection and credit, or that they will suffer any loss or damage if the credit is not allowed; if so, they clearly have no equity which entitles them to withhold the proceeds from the owners of the note.

The judgment is reversed, and a *venire facias de novo* awarded.