John J. Pepperday *v.* Citizens National Bank of Latrobe, Appellant.

*Banks and banking—Principal and agent—Check.*

A national bank voluntarily acting as the agent of one of its depositors in the sale of certain securities sent the securities to a broker in a distant city, who sold them and sent a check to the bank for the proceeds of the sale. The bank observed due diligence in forwarding the check for collection, but before it could reach the bank upon which it was drawn, the broker made an assignment and the check proved worthless. When the bank first received the check it credited the amount of it to the depositor's account, and permitted him to draw it out. Subsequently, upon the check being returned as worthless, the bank charged off from the depositor's account the amount previously credited to him. *Held,* that the bank had no right to charge back the credit, and it could not relieve itself, by so doing, from liability for the amount thereof, to the depositor.

Argued Oct. 14, 1897. Appeal, No. 91, Oct. T., 1897, by defendant, from judgment of C. P. Westmoreland Co., Feb. T., 1896, No. 548, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. MITCHELL and WILLIAMS, JJ., dissent.

Assumpsit by a depositor against a bank. Before DOTY, P. J.

At the trial it appeared that on September 19, 1895, the plaintiff, who owned certain shares of Penna. R. R. stock, and who was a depositor of defendant, a national bank in Latrobe, Pa., brought to the defendant a number of said shares of said stock, with the request that they be placed on sale with L. H. Taylor

& Co., a firm of bankers and brokers, in Philadelphia, and be sold at such time and at such price as the plaintiff should thereafter direct.

The stock was transmitted by the defendant to said firm, and quotations of the market price were sent from time to time by said brokers to defendant bank, one of which, signed by L. H. Taylor & Co., plaintiff admitted had been shown to him some time prior to the sale. The firm of L. H. Taylor & Co. were up until the moment of their failure on December 21, 1895, reputable bankers and brokers on the stock board in good financial standing and repute. The defendant, in this transaction, acted for the plaintiff as his correspondent and agent in the sale of his stocks as a matter of accommodation without compensation or reward, turning over to him the exact proceeds of the sale of the stock received from the brokers. On December 17, 1895, the plaintiff directed the defendant to instruct said L. H. Taylor & Co. to sell twenty shares of the stock, the brokers to use their judgment whether to sell it on the 18th or hold it for a higher price on the 19th. In pursuance of the directions given, L. H. Taylor & Co. on December 19, reported to defendant that they had, on December 18, sold twenty shares, and on December 20, at noon, the defendant received from Taylor & Co. their check drawn on the Philadelphia National bank, payable to defendant, dated December 19, 1895, for $1,073.75, the net proceeds of sale.

The defendant, having no Philadelphia correspondent, on the same day the check was received, indorsed and transmitted it for collection through the Second National Bank of Pittsburg. On December 23, the check was presented at the bank on which it was drawn and protested for nonpayment, defendant received the protested check back in regular course on December 26.

When defendant first received the check, on December 20, it credited plaintiff's bank account with its proceeds $1,073.75, and subsequently credited plaintiff's pass book, and when the check was returned dishonored, defendant charged it to the plaintiff on the books of the bank.

On December 21, 1895, L. H. Taylor & Co. failed, having made a voluntary assignment which was recorded on December, 21, at 11 o'clock A. M., at Philadelphia, the deed having been delivered in the morning, prior to the time their check to defendant, received on December 20, could have been presented

for payment if sent direct to Philadelphia. Taylor & Co. at the time of their assignment were insolvent.

Other facts appear by the opinion of the Supreme Court.

The court gave binding instructions in favor of the plaintiff.

Verdict and judgment for plaintiff for $516.86. Defendant appealed.

*Error assigned* among others was in giving binding instructions for plaintiff.

*Paul H. Gaither*, with him *G. H. Albert*, *A. H. Bell* and *Cyrus E. Woods*, for appellant.—In all cases cited by plaintiff's counsel at the trial the bank was held liable, because it took a check or draft in payment of another check or draft left with it for collection.

We maintain that the law was complied with by the defendant, in its dealing with plaintiff and in the treatment of the Taylor & Co. check when it was returned unpaid. As early as December 23, plaintiff disowned the check. On December 27, after he had received notice that the check was protested, that the credit item was charged off, and the defendant would be glad to confer with him in reference to filing claim with assignees, he again refused to acknowledge the check as his own.

*John B. Head*, with him *James S. Moorhead*, for appellee.—The plaintiff was a depositor with the defendant, and the latter could reasonably expect the use of the money until needed by the plaintiff. This would be a valuable consideration: Bank v. Goodman, 109 Pa. 426 ; Swartz v. Hauser, 10 W. N. C. 435.

If the bank saw fit to accept anything else from the purchaser or any subagent it employed, its principal would not be bound thereby, but could compel it to account as if it had received the cash: Paul v. Grimm, 165 Pa. 139 ; Hazlett v. Bank, 132 Pa. 118 ; Bank v. Ashworth, 123 Pa. 212.

OPINION BY MR. JUSTICE GREEN, January 3, 1898 :

If the plaintiff had been the owner of the check in question, and had deposited it with the defendant bank for collection, it may be conceded that the bank would not have been liable for nonpayment of the check. While the course and the process

of collection were rather slow, it was still within the limits of ordinary bank usage, and we think a charge of negligence could not have been established. But the trouble with the case is that there were no such facts in it. The plaintiff was not the owner of the check, and he did not deposit it for collection. The check was drawn to the order of the defendant and was therefore the property of the defendant. It might do with it as it chose. The liability of the defendant to the plaintiff was not a liability on the check, or for any use the defendant did make or could make of it. The check was the exclusive property of the defendant, the plaintiff had no interest in it whatever. In order that the plaintiff might become its owner, it would have been necessary for the defendant to indorse it, so as to make it payable to the plaintiff's order. Even if the plaintiff had received the physical custody of the check by delivery of its corpus to him, he could not have deposited it in the defendant's bank for collection without the indorsement of it by the defendant to his order, or in blank. But there were no facts of that character in the case. The bank never delivered the check to the plaintiff, nor did it deposit the check to the credit of the plaintiff's account. It assumed it itself, and of course assumed the collection of it. The plaintiff as a matter of fact had nothing whatever to do with the check. He had no right, title or interest in it, and he was never placed in such a position by the bank that he could possibly have exercised any claim of dominion or ownership or interest of any kind, in it. Moreover the defendant still has the check. It has never delivered or tendered it to the plaintiff, and hence if it had received the check from the plaintiff in regular course it would have been liable. In Fifth Nat. Bank v. Ashworth, 123 Pa. 212, Mr. Justice PAXSON, delivering the opinion, said, "It is safe to say as a general rule, that when a bank receives a check from one of its depositors for collection it must return him the check or the money."

The present action is brought by the plaintiff as a depositor in the defendant bank to recover the amount of his deposit, $516.86, standing to his credit on the books of the bank, after the refusal of the bank to pay his check for that amount on December 27, 1895. The defendant company refuses to pay the money because it says that owing to a transaction which it

had with the plaintiff, it had received from the plaintiff fifty-one shares of the capital stock of the Pennsylvania Railroad Company, to be sold for his account, and upon his direction. That it had sent the certificates of stock to a firm of brokers, L. H. Taylor & Co. in Philadelphia, where they remained until, on December 17, 1895, the plaintiff directed the defendant to sell twenty shares of the stock at the best market price on December 18 or 19. This order was communicated to the brokers by the bank, and on December 18 the brokers reported that they had sold the stock. On December 20, the defendant received from the brokers their check on a Philadelphia bank, payable to the order of the defendant bank, for $1,073.75. It then credited the plaintiff's account on its books and sent the check with other checks to Second National Bank of Pittsburg, for collection, for the account of the defendant bank. On December 24, it received a telegram which announced the assignment of Taylor & Co. of Philadelphia, and on December 27 the check came back protested. It charged back on the plaintiff's account the amount of the check and protest, and thus reduced the amount of his credit so that his account was overdrawn. It claims that it was relieved of liability for the loss on the Taylor check, and might lawfully charge the plaintiff's account with this loss. The question at once arises, what was the true legal relation between the plaintiff and defendant as to this particular transaction? It is perfectly clear that it is not a relation of depositor with the bank. The plaintiff never having had the check never deposited it with the defendant. It is true the defendant credited the plaintiff's account with the amount of the check when it received it. It thus made itself debtor to him for the amount credited. This it had a perfect right to do, and the plaintiff had a perfect right to accept the credit and draw against it. When the bank gave the credit to the plaintiff, it of course assumed that the check would be paid, as it had a right to do, but does it follow that when the check was dishonored several days later on presentation, the defendant had a lawful right to charge back the loss to the plaintiff's account? As has already been said, if the check had belonged to the plaintiffs, and had been deposited by him, the bank would probably not have been chargeable with the commercial negligence which imposes liability on that ground upon such institu-

tions. But is it perfectly clear that such was not the legal relation of the plaintiff and defendant, and hence the rule which would or might have exempted the bank from liability as a consequence of such a relation has no application, and cannot be invoked by the bank. What then was their true legal relation? The bank voluntarily undertook to sell the plaintiff's stock at his request. But in so doing it was not exercising any function which pertained to it as a bank. It is no part of the business of a national bank to engage in the selling of stocks for anybody. It was a transaction outside of its regular banking business, and not within its chartered powers. This being so, when the bank received the stock from the plaintiff, and agreed to sell it, it could only be understood to assume the relation of agent for the plaintiff as principal, in that particular transaction. When it sold the stock it was acting as his agent, and became subject to whatever rules of law are applicable to that relation. Of course, acting in that capacity, it could sell as any other agent, and would be responsible for its acts as any other agent.

In the case of Bank v. Ashworth, above referred to, the transaction in question was in the line of ordinary banking business, yet the defendant bank was held liable, simply because, in collecting its customer's check it took a cashier's check for the check deposited instead of taking cash. The action was by a depositor against a bank with which he had deposited a check for $2,622.25 on the Penn Bank. The check was presented next day through the clearing house, but the Penn bank had then closed its doors and the check was protested. A few days later the Penn Bank resumed operations, and was open, and doing business on the day following. On that day the check was again presented, together with some other checks, by the defendant bank, and in exchange for them all a cashier's check of the Penn bank was given to, and received by, the defendant bank. The Penn Bank was paying all checks presented. The cashier's check was deposited by the defendant bank with another bank through which it cleared, but on the next business day, which was Monday following the Saturday on which the cashier's check was given, the Penn Bank again closed its doors, and the cashier's check was not paid. On these facts we held the defendant bank responsible to the plaintiff for the loss. PAXSON, J., further said: "It is equally clear that if the collecting bank

surrenders the check to the bank upon which it is drawn, and accepts a cashier's check, or other obligation in lieu thereof, its liability to its depositor is fixed, as much so as if it had received the cash. It has no right, unless specially authorized to do so, to accept anything in lieu of money; (citing Merchants' National Bank v. Goodman, 109 Pa. 422, and several other cases). We need not discuss the question whether the defendant failed to exercise due diligence in not sending the dishonored check through the clearing house on Saturday. That it could have been done, and was done by some other parties, distinctly appears by the evidence, and is not disputed. We think the defendant bank fixed its liability by surrendering the check to the Penn Bank and accepting the cashier's or teller's check of that bank. As between the defendant and its depositor, this amounted to payment. The plaintiff has neither his check nor his money." With how much more force do these remarks apply to the present case. Here the defendant accepted the check of Taylor & Co. in payment for the stock, when it had no legal right to accept anything but money. It credited the plaintiff's account with the amount of the check, and thereby assumed it to be that much cash. It might have notified the plaintiff that it had received the check, and delivered it to him, or held it for collection before crediting his account. If he had accepted it as cash the bank would have been exonerated, or if he had agreed it might hold it for collection before giving him credit, and had used due diligence in its collection, it probably could not have been held liable. But neither of these things was done, on the contrary it assumed it as cash and so treated it in its dealing with the plaintiff. We do not see how it can be relieved from responsibility. In the case of Bank v. Goodman, supra, we held that a bank which had received for collection from a depositor a check on another bank, and had sent the check to the bank on which it was drawn, and had received from that bank a draft on some other bank which was not paid, was liable to its depositor for the check he had deposited. It was claimed that there was no negligence, because the usual course of business was followed. But we held this was not sufficient. The court below said, and we affirmed it, "The defendant assumed the responsibility of sending the evidence of the plaintiff's right to have the money for which it called collected for

their benefit, to the bank which was expected to make payment. Not obtaining the money, but a worthless draft, in return, the defendant, treating the check as not paid, charged the amount of it back to the plaintiff's account, and when they called for the check, as the best evidence of their right to recover against the maker, they are informed, the check you call for cannot be returned; it was paid, charged to the drawer's account and cancelled." We held the same doctrine in Hazlett v. Bank, 132 Pa. 118.

That an agent for sale has no power to receive anything but money in payment is too familiar a rule to require the citation of authorities to support it. A single reference to one of our most recent decisions, where the subject is reviewed, will suffice : Paul et al. v. Grimm, Admr., 165 Pa. 139.

We cannot see how this case can be decided upon the question whether the bank used due diligence in collecting the check of Taylor & Co. It never was the property of the plaintiff. He did not deposit it, and had nothing to do with it. The defendant received it, owned it, held it, still holds it, and never even tendered it to the plaintiff. The bank treated it as cash on its own responsibility, and credited the plaintiff's account with the amount of it. We know of no principle upon which it can charge back to him a check which he never saw, never owned, never had any interest in, and upon which his name never did, and does not now appear, either as drawer, payee, indorser or in any other manner whatever. The assignments of error are dismissed.

It is perfectly manifest that if the bank had paid to the plaintiff in bank notes the amount of the check, and he had put them in his pocket and gone about his business, the bank could never have recovered back the money. It could pay him the money if it chose, and he could receive it in good conscience. That being so, he could keep it, and could not be compelled to repay it. The law upon that subject is without question. The payment would be voluntary on the part of the bank, and being such, the plaintiff could conscientiously receive it, and he could thereafter retain it. Now it so happens that the actual facts make out just such a case. When the bank received the check and credited the plaintiff's account, it gave him notice to that effect, and thereupon he drew a check for $1,600 against his

account, which included the whole amount of the sum credited, and $600 besides, and when the check was presented the bank paid it. It was not until after this that it charged back the credit against the account. This, it is very clear, it could not do without his consent.

Judgment affirmed.

Mr. Justice Mitchell, dissenting.

As to the stock, the bank was a mere agent for transmission and sale, not responsible for anything but negligence, of which there is no evidence. This is conceded. In the ordinary course of business the bank received the check for the proceeds of the sale of stock, and of course its title to the check was only as agent for the real owner, the plaintiff. Treating the check as money, also in the ordinary course of its business, the bank passed the amount to the credit of the plaintiff in his account. It is said in the opinion of the court that it is clear that as to the check the relation of depositor did not exist. But with great respect for my brethren who so hold, I think it perfectly clear that that was the exact relation. The bank treated the check as money of its depositor, credited it in his deposit account, so notified him, and he ratified and assented to its action by drawing against the sum. It is the basis of the alleged balance of deposit in his favor, for which this suit is brought. Without that check as part of his deposit account he has no such balance, his account is overdrawn. When the check came back unpaid the bank charged it up against its depositor to offset the formal credit which had been given him for it. This it had the right to do, just as if it had credited him with a deposit of $1,000 in bank notes or gold coin which later were found to be counterfeit.

It is also said that the bank still has the check, and has not delivered it to plaintiff. He refused it. When he was notified that it had come back he said peremptorily he had nothing to do with it. In this he was wrong. It was the basis of a credit to which he was not entitled, and on which he should not be permitted to recover.

Williams and Fell, JJ., join in this dissent.