## Eller, Appellant, *v.* First National Bank.

*Banks and banking—Bill of exchange—Collection—Payment.*

Where the apparent owner and holder of a draft deposits it with a bank for collection, and the bank after collecting the draft honors various checks of the apparent owner until they aggregate an amount in excess of the proceeds of the draft, and thereafter the apparent holder becomes indebted to the bank, the real owner who had not received the proceeds, of whom the bank had no notice, cannot thereafter compel the bank to pay the amount of the collection to himself.

Argued April 29, 1913. Appeal, No. 149, April T., 1913, by plaintiff, from judgment of C. P. Allegheny

34    ELLER, Appellant, *v.* FIRST NAT'L BANK.

Statement of Facts—Opinion of the Court.    [55 Pa. Superior Ct.

Co., First Term, 1910, No. 80, on verdict for defendant in case of J. H. Eller v. First National Bank. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.    Affirmed.

Appeal from order of an alderman.    Before CARNAHAN, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant.    Plaintiff appealed.

*Errors assigned* were various instructions.

*H. J. McAllister*, of *Pettes & McAllister*, for appellant, cited: Hackett v. Reynolds, 114 Pa. 328; First Nat. Bank v. Gregg, 79 Pa. 384.

*George C. Bradshaw*, for appellee, cited: Morgan v. Tener, 83 Pa. 305; Hoover v. Wise, 91 U. S. 308; Bradstreet v. Everson, 72 Pa. 124.

OPINION BY HEAD, J., October 13, 1913:

A. H. Post & Co., of New York City, were "Foreign Freight Forwarders, Custom House Brokers and Foreign Exchange Collectors." The plaintiff, through their agency, shipped a consignment of merchandise to a purchaser in South Africa. At about the same time he drew on the consignees for the price of the goods. Whether the draft was to the order of Post & Co., or to the order of the drawer, and by him indorsed, the record does not certainly show, but that becomes immaterial in the light of the concession of the parties that there was nothing on the face of the draft or its indorsement to indicate aught else than that Post & Co. were holders for value. In point of fact, however, they paid nothing for the draft, made no advances on account of it, and received it only for collection.

Post & Co. had established a business relation with the defendant First National Bank of Pittsburg and did much of their foreign collecting through the bank. The draft in question was sent by Post & Co. to the bank and by the latter to its correspondent in South Africa. Before it matured and was presented for payment the drawee became insolvent and payment was refused. The bank knew nothing of Eller, the drawer and present plaintiff, and had no knowledge of the nature of his relations with Post & Co. As already stated, to all external appearances the latter were holders for value of the draft. In due time a partial distribution of the estate of the insolvent drawee was made and the defendant bank received a proportionate share of its claim amounting to about $1,000. On receipt of this sum it was at once credited to the account of Post & Co. and notice of the credit given to the latter. They in turn accounted to Eller, the plaintiff, and as to that transaction there is no controversy whatever.

On July 16, 1908, the bank received a second installment of $261.45 on account of the debt. As before, this amount was credited in the account of Post & Co. and that account then showed a balance of $284.88 due from the defendant to Post & Co. This included the amount received and credited as above stated.

The plaintiff, in October, 1909, brought this action to recover from the defendant the amount of the second installment referred to. He declares in his testimony that he was advised by Post & Co. that the bank had received this second installment and that he should collect it directly from the bank, but no such notice was given by Post & Co. to the bank, nor by the plaintiff until long after Post & Co. had become indebted to the bank as hereinafter stated. He thereupon made a demand for payment to him, and the bank having declined to pay, he brought the action. Having produced evidence to warrant a finding that, as between the plaintiff and Post & Co., the proceeds of the original draft were his, the plaintiff asserts that under the law the defendant became liable to pay

directly to him. His counsel earnestly and ably argues that the learned court below should have directed a verdict for the plaintiff because, as he views it, the present case is on all fours with First National Bank of Clarion v. Gregg, 79 Pa. 384, and Hackett v. Reynolds, Lamberton & Co., 114 Pa. 328.

As the controlling facts in the two cases cited are identical, an analysis of one will be sufficient to disclose the substantial differences between those cases and the one at bar. In First Nat. Bank v. Gregg, 79 Pa. 384, the plaintiff delivered to Brady & Co., a firm of private bankers in the city of Pittsburg, a note made by a debtor in Clarion county. Brady & Co. in turn sent the note to the First National Bank of Clarion and it was collected by that bank from the debtor. At the time the Clarion bank received the note and the proceeds thereof it had permitted, for its own convenience, a large credit balance to accumulate in the hands of Brady & Co. That situation was not caused or changed by the receipt of the plaintiff's note and its subsequent collection, and it was held that under such circumstances the bank in Clarion could not hold the money of the plaintiff for the purpose of cutting down the indebtedness which it had permitted Brady & Co. to owe. The core of the decision may be found in the following quotation from the opinion of Mr. Justice WILLIAMS: "It is true that they were the apparent owners of the note, and, in the absence of notice of the plaintiffs' title, the bank had the right to treat them as the real owners. If it had made advances or given new credits to Brady & Co. on the faith of the note, it would undoubtedly be entitled to retain the amount out of the proceeds. But just at this point the defense wholly fails." Manifestly then, if after collecting the money in Clarion county, the bank had remitted the amount of such collection to Brady & Co., the apparent owners of the note, the real owner could not afterwards be heard in an attempt to collect a second time.

Now in the present case we have seen that on the date

of the receipt by the defendant of the second installment on account of the original draft, after credit had been given to Post & Co. for $261.45, the defendant had in its hands a total sum of $284.88 due to Post & Co. If, without any knowledge of the plaintiff's claim, the bank had sent by express the currency to extinguish the balance, or paid it in New York exchange, or in any other recognized mode of payment accepted by Post & Co., its legal obligation was fully discharged. The ledger account offered in evidence appears to have been accepted as correct. It shows that on July 18 the defendant had paid something over $100 on account of its indebtedness to Post because on that date the credit balance of the latter was but $173. By August 29, this had been reduced by some further payment to $115, by September 3, to $93.00, and between the last-named date and September 12, the defendant had so far overpaid Post & Co. that the credit balance had been entirely wiped out, and they had become indebted to the bank in the sum of nearly $800. We do not regard it as of the least importance that the various remittances made by the bank to Post & Co. are not shown to have been in currency or particularly with reference to the receipt of the installment. Presumably Post & Co. were entirely familiar with the state of the account between them and the bank. They were advised of the credit to that account on the receipt of the installment. As long as that account showed a balance in their favor they could draw against it at their pleasure or require it to be paid in any way convenient to the parties. If the bank sent to them items for collection on parties in New York and these collections were made, that was none the less the money of the bank, and its acceptance by Post & Co., with the resulting extinguishment of their credit balance, shows a complete payment by the bank of the amount of money collected to the apparent owner of the claim from whom it had been received. These facts clearly differentiate the present case from those cited, and they in turn become authority for the proposi-

tion that under the facts here existing the plaintiff's case failed. It is clear then the plaintiff could in no aspect of the case have a directed verdict in his favor, and the first assignment of error is overruled.

Were anything to be gained by a new trial, we would be unwilling to adopt the language of the general charge in which certain questions of fact were submitted to the jury. But if the ledger account of the bank offered in evidence is accepted as correct, and we understand it to have been so accepted, it would be useless to send the case back for a second trial. The judgment entered by the learned court below was right. That being true, even if the reasons which prompted the entry of that judgment do not appear to us to be sound, the error nevertheless was a harmless one and the judgment should not be disturbed.

Judgment affirmed.