Pa. Co. for Ins. on Lives & Annuities *v.* Skelly Bolt Co., Appellant.

516

Argued October 3, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*E. Spencer Miller,* for appellant, cited: National Bank of Phoenixville v. Bonsor, 38 Pa. Superior Ct. 275; First National Bank of Clarion v. Gregg, 79 Pa. 384.

*John Kennedy Ewing, 3d,* of *Saul, Ewing, Remick & Saul,* for appellee, cited: Meyercord Co. v. Gwilliam Mfg. Co. (No. 1), 85 Pa. Superior Ct. 33; Werbitsky

v. Fisher, 64 Pa. Superior Ct. 284; Wright v. General Carbonic Co., 271 Pa. 332.

OPINION BY TREXLER, P. J., December 16, 1932:

The case is presented on the pleadings. The lower court entered judgment for want of a sufficient affidavit of defense. The plaintiff avers and the defendant admits that the plaintiff is the holder of two checks drawn by A. Kretzschmar, treasurer, totaling $1,100, dated April 15, 1931 drawn on the Northwestern National Bank and Trust Company, payable to A. Kretzschmar. Kretzschmar was the treasurer of the Thomas P. Skelly Bolt Company, the defendant in the present suit. Kretzschmar endorsed the checks in blank and gave them to the Security Title and Trust Company on April 15, 1931 and the latter company endorsed them over to the Pennsylvania Company for Insurances on Lives & Granting Annuities, who paid full value for them to the Security Company. When presented to the Northwestern Company, payment was refused by direction of the defendant company, whereupon, the Pennsylvania Company the last holder brought this suit. The defense is that the checks were delivered to the Security Company under an oral agreement for collection only, and that the plaintiff knew this. It is asserted that the Security Company was directed not to make use of or deal with the checks until the following day, April 16, 1931, and then subject to the conditions imposed on the day of transfer, April 15, 1931. The occasion for all the dispute is the failure of the Security Company, which institution was closed on April 16, 1931 by the State Banking Commissioner, with the evident result that the payee of the checks was unable to obtain the proceeds of them from the defunct institution. In a supplementary affidavit the allegation is made that instead of being endorsed over to the plaintiff by the Security Company on April 15, 1931, it

was on April 16th, or on a later date, the date appearing on the endorsement, being put thereon on a day subsequent. The contention of the defendant is that there was a fraudulent misappropriation of the check sued on and the bank of deposit having right of collection only, and being insolvent could pass no title to the checks, the transferee of the checks having knowledge that the checks were given for collection only.

In the affidavit of defense there is no allegation that the plaintiff had any knowledge of any fact except that it is alleged that when it received the checks it knew that the same had been delivered to the Security Company for collection only, and that quoting the language of the affidavit of defense "that said Security Title and Trust Company did not have any title, authority or power to transfer them otherwise than for the like purpose." The knowledge that the Security Company had received the checks for collection did not prevent the Pennsylvania Company from acquiring title. This court has so decided in McKinley v. Wainstein, 81 Pa. Superior Ct. 596. When the Security Company passed these checks to the Pennsylvania Company it was in furtherance of the agency and the Pennsylvania Company having received these checks for collection and having paid full consideration for them, it acquired sufficient title to allege ownership and to maintain the suit in its own name.

Furthermore, the affidavit is insufficient in that it alleges knowledge on the part of the Pennsylvania Company merely in general terms. Through what channel this information was conveyed is not stated. An affidavit of defense is for the purpose of setting out the facts, so that the plaintiff may be apprised as to what opposition to his claim he has to meet at the trial, and also that the court may decide the question, if raised, whether the defense disclosed is sufficient to

warrant the parties going to trial. In Meyercord v. Williams Manufacturing Co., 85 Pa. Superior Ct. 33, we stated: "Where notice is alleged there should be the time, the manner, and the person who received the notice set out. These facts are vital elements when the defense depends upon the fact that the plaintiff had knowledge of certain matters." To make the assertion that notice was given with any assurance of its truth, the defendant must necessarily have known how the bank got the information, and should have disclosed the manner in which the notice was conveyed.

The defendant further states that Kretzschmar revoked the oral agency given to the Security Company, but how, or when does not appear and the assertion is made without any designation of the time, or that the fact of the revocation was communicated to the present holder of the checks. If there was any special agreement made between the payee of the checks and the Security Company, it did not affect their character as negotiable instruments so far as the plaintiff is concerned, excepting as to such arrangements as it had knowledge, and as stated before the only knowledge alleged is that the Pennsylvania Company knew the checks were sent for collection. The assertion that the endorsement was not made on April 15th, but later seems to have no significance. It is not stated that it was made after the doors of the bank were closed. The possession and control of the checks must have been in the Security Company when the transfer was made. There is no question that the proceeds of the checks went to the Security Company. That the failure of the bank might be imminent does not affect the question. It was still functioning when the checks were passed, and while its officers should not, if they knew the company was insolvent, accept the checks for collection, the actual fraud was committed when the bank used the money it received as agent for its own purposes instead of keeping it intact for its principal.

The Security Company was authorized to collect the checks. There was nothing wrong in its doing this, for that was the very purpose for which the checks were given to it. When it collected the checks it should have earmarked the proceeds as agent, and preserved the identity of the fund for its principal. Cameron v. Carnegie Trust Co., 292 Pa. 114; 140 A. 768. Apparently it mingled the proceeds with its general funds. There is no evidence as to that, but we may infer it because if it had earmarked the fund there would have been no loss ensuing. If there was fraud committed it was not in the recovery of the amount of the checks, but the disposition of the proceeds. The Pennsylvania Company had nothing to do with the transaction between Kretzschmar and the Security Company, after it paid the money. The Pennsylvania Company, even if we assume that it knew that the Security Company was in straitened financial condition and that the checks were received for collection only, was not bound to assume that the Security Company would fraudulently misappropriate the money received for the checks by mingling it with its own funds, when it was its duty to preserve its identity by setting it apart in a separate fund.

The judgment is affirmed.