Fischbach & Moore, Inc., Appellant, v. Philadelphia National Bank.

Argued October 4, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Daniel Lowenthal,* with him *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*Frederick H. Spotts,* with him *Pepper, Bodine, Stokes & Schoch,* for appellee.

OPINION BY KELLER, P. J., January 31, 1939:

This action of assumpsit which was begun on November 21, 1931 to recover $17,799, which it was alleged the defendant had collected on a city warrant issued by

the City of Philadelphia to the plaintiff, 'or any bank, banker or trust company', and had refused to pay over to plaintiff, later became resolved into an action to recover *interest* on that amount from December 22, 1930, (when it was alleged defendant had received the money), to September 22, 1932, (when the Secretary of Banking, as statutory receiver in charge of the Bankers Trust Company, under order of court, paid the principal of said warrant to the plaintiff).

By direction of the trial judge a verdict was rendered for the defendant. The court in banc discharged plaintiff's rule for judgment non obstante veredicto. Plaintiff appealed. The Judgment will be affirmed.

The facts are somewhat complicated and need to be rather fully stated in order to understand the legal questions involved.

On December. 11, 1930 plaintiff delivered to Federation Bank & Trust Company of New York, an *order* of the Mayor of Philadelphia for a city warrant for the payment of $17,799 due by the city to the plaintiff. The order was delivered with instructions to obtain a Philadelphia city *warrant* in accordance therewith and make collection of said warrant.

Federation Bank & Trust Company sent the order to Bankers Trust Company of Philadelphia to present the same to the proper city authorities and get a city warrant, and to collect the warrant when so received.

Bankers Trust Company presented the order and obtained a Philadelphia city warrant for $17,799, dated December 5, 1930, payable to "Fischbach & Moore, Inc., or bearer," duly signed by the Mayor, and approved and countersigned by the City Controller, designating the appropriation account to be debited with the amount, and stating the transaction which gave rise to it. A rubber stamp in the following form,

OR ANY BANK
BANKER OR TRUST
COMPANY

was placed on the warrant over the words "or bearer," but the latter were not erased.

Appellant has devoted considerable argument to the proposition that the warrant was not negotiable. The term "negotiable" is sometimes used in several senses. One is, Capable of being transferred by indorsement or delivery; another, and more exact, meaning is, Capable of being transferred by indorsement or delivery so as to pass to the holder the right to sue in his own name and take free of the equities against the assignor payee. An instrument may be negotiable in the former sense, without being negotiable in its truer and stricter meaning: *Vietor v. Johnson,* 148 Pa. 583, 24 A. 173; *City of Scranton v. Hyde Park Gas Co.,* 102 Pa. 382. It is in the latter and more exact meaning above referred to that the cases cited by appellant held that a county, borough or city order or warrant is not negotiable, in that a subsequent holder is not authorized to maintain suit upon it in his own name, as upon a bill of exchange or promissory note, nor is it a satisfaction of the original indebtedness, and the municipality may set up the defenses it may have against the contractor or payee. But if a *city warrant* is drawn in negotiable form and is approved and countersigned by the city controller it will pass whatever title the payee may have without a special assignment, and the holder may sue upon it in the name of the payee to his use, (*City of Scranton v. Hyde Park Gas Co.,* supra, pp. 386-7), and if payment is made by the city to the holder or indorsee, pursuant to its tenor, it is a good payment. While the city warrant issued in this transaction was not negotiable in the true and exact meaning of the word, it was "issued in a negotiable form," (*City of Scranton v. Hyde Park Gas Co.,* supra, p. 387), and all of the parties so treated it. No assignment, other than endorsement, was made by any of the parties into whose hands it came and it was paid by the City of Philadelphia in that form, and was a good payment discharging the debt.

Bankers Trust Company, late in the day or evening of December 19, 1930, *stamped* the following endorsement on the warrant, "Pay to the order of any Bank, Banker or Trust Co.—Prior endorsements guaranteed.— Dec 19 1930—Bankers Trust Company of Philadelphia. Clinton S. Seltzer, Treasurer" and delivered it to the defendant with other items similarly endorsed, aggregating together $83,837.34, for deposit to its account in the defendant bank. There is no evidence in the case that defendant bank had any knowledge that Bankers Trust Company was not the owner of the warrant. On the same date Bankers Trust Company mailed its treasurer's check to Federation Bank & Trust Company by way of remittance. This check, however, was not paid because, before it could be presented and paid, Bankers Trust Company had closed its doors.

At the opening of business the next day, December 20, 1930, the aforesaid deposit of $83,837.34, which included the said warrant for $17,799, was the first item credited to the account of Bankers Trust Company in the defendant bank. On the same day defendant presented the said warrant and other similar warrants received from other sources, together aggregating $20,086.05, to the city treasurer, but instead of getting cash, it accepted from him a check for that amount *payable to The Philadelphia National Bank,* or order, drawn on The Pennsylvania Company, and the warrant was thereupon stamped "Payment received—Dec 20 1930—The Philadelphia National Bank. O. Howard Wolfe, Cashier." This check was actually paid through the clearing house on December 22, 1930.

At the close of business on December 19, 1930, there was standing to the credit of Bankers Trust Company in The Philadelphia National Bank the sum of $500,-594.63. On December 20, 1930, items totalling $716,-080.64 were properly charged against this account, of which $665,106.46 represented *money* paid by The Philadelphia National Bank to Bankers Trust Company that

day, and $50,974.18 represented payments made that day to other banks by direction of Bankers Trust Company. During that day there were also credited to Bankers Trust Company on the books of The Philadelphia National Bank additional deposits, consisting of checks, drafts and other paper—nearly all of which were for collection—amounting to $275,445.61, so that the book balance standing to the credit of Bankers Trust Company in defendant bank at the close of business on Saturday, December 20, 1930, was $143,796.94. Some additional deposits were made by Bankers Trust Company in defendant bank late on Saturday afternoon which were not credited on the bank's books until Monday morning.

Bankers Trust Company failed to open on Monday, December 22, 1930. On that date it was indebted to The Philadelphia National Bank in the sum of $4,490,-785.17, secured by collateral. On December 27, 1930 The Philadelphia National Bank applied the amount standing to the credit of Bankers Trust Company on its books, $249,705.71, against its indebtedness to it, and thereafter sold sufficient of the collateral security held by it, to pay the balance of the indebtedness of Bankers Trust Company. The remaining collateral, which exceeded $17,799, was turned over to the Secretary of Banking in possession of Bankers Trust Company, before any demand was made on defendant bank by the plaintiff for the proceeds of the warrant, and it was out of the proceeds of the securities thus turned over, or cash in the vaults of the trust company when the Secretary of Banking took charge of its affairs, that, pursuant to appropriate proceedings instituted in the court of common pleas having jurisdiction of his accounts, and the order of said court thereon, (in conformity with *Cameron v. Carnegie Trust Co.*, 292 Pa. 114, 140 A. 768), the Secretary of Banking on September 22, 1932 paid this plaintiff the principal amount of said warrant, $17,799.

From the facts thus stated we are of opinion that the case was rightly decided in the court below.

1. Whatever the relation between the plaintiff and Bankers Trust Company, the form of the warrant authorized defendant bank to credit the amount of it to Bankers Trust Company's account and to pay out the proceeds on checks or drafts drawn against it by Bankers Trust Company. If plaintiff, whose address did not appear on the warrant, had transferred it to Bankers Trust Company in satisfaction of a debt, the warrant would have been in no different form. By the transaction, title to the warrant passed to The Philadelphia National Bank (*Penna. Co. v. Skelly Bolt Co.*, 106 Pa. Superior Ct. 515, 163 A. 328; *Lipschutz v. Phila. Savings Fund Society*, 107 Pa. Superior Ct. 481, 164 A. 74; *Lightfoot v. Bunnel*, 76 Pa. Superior Ct. 468), and Bankers Trust Company was permitted to draw against the proceeds credited to its account. It is of no consequence that checks were drawn against the fund before the check which The Philadelphia National Bank accepted in payment of the warrant was actually paid in cash. The defendant bank could, if it chose, treat it as cash, and having credited Bankers Trust Company's account with the check received by it, and permitted it to draw out the money, it assumed the risk of its collection: *Pepperday v. Citizens Nat. Bank of Latrobe*, 183 Pa. 519, 526, 38 A. 1030.

2. It is clear from the facts above stated that the proceeds of the warrant, $17,799, were paid out by defendant bank on December 20, 1930, to Bankers Trust Company, on checks drawn by it against its balance in defendant bank. In order to make payments of $716,080.64, The Philadelphia National Bank had to exhaust:

    (1)  the balance on deposit to its (Bankers Trust Company's) credit on the evening of December 19 .............. 500,594.63

    (2)  plus the first deposit of December

20, which included the warrant for
$17,799 .......................... 83,837.34

(3) plus advances against items deposited
later on December 20, and not yet
collected ........................ 131,648.67

716,080.64

It is of no moment that additional deposits for collection were made by Bankers Trust Company during December 20, so that at the close of that day its balance in The Philadelphia National Bank was $143,796.94. The proceeds of the warrant credited at the opening of business on December 20 had been drawn out on Bankers Trust Company checks, of which it had itself received in cash, $665,106.46, or $80,674.49 more than the deposit balance at the close of December 19, $500,594.63, plus the first deposit of December 20 of $83,837.34—which included the warrant for $17,799.

This appropriation—first payments out extinguishing first payments in—is the general rule as respects such accounts in this State, being founded on the rule as laid down in Clayton's Case, a subdivision of the case of *Devaynes v. Noble*, 1 Merivale 529, which dealt with various claims against an insolvent firm of bankers— Clayton's Case beginning at page 572. The Master of the Rolls, said in that case, (p. 608) : "In such a case, [a banking account where all the sums paid in form one blended fund, the parts of which have no longer any distinct existence], there is no room for any other appropriation than that which arises from the order in which the receipts and payments take place, and are carried into the account. Presumably, it is the sum first paid in, that is first drawn out. It is the first item on the debit side of the account, that is discharged, or reduced, by the first item on the credit side. The appropriation is made by the very act of setting the two items against each other. Upon that principle, all

accounts current are settled, and particularly cash accounts."

Clayton's Case was cited by name by our Supreme Court in *Pittsburgh v. Rhodes*, 230 Pa. 397, 399, 79 A. 634, in connection with the rule as to the application of payments in current accounts, including bank accounts; and the rule announced in Clayton's Case, although reference was not specifically made to the case,[1] has, with but few exceptions, been followed, as per, inter alia, the following cases: *Berghaus v. Alter*, 9 Watts 386; *Speck v. The Comth.*, 3 W. & S. 324, 328; *McKee's Exr. v. The Comth.*, 2 Grant 23; *Pierce v. Sweet*, 33 Pa. 151, 157; *Hollister v. Davis*, 54 Pa. 508, 510; *Souder v. Schechterly*, 91 Pa. 83, 86, 87; *Pardee v. Markle*, 111 Pa. 548, 555, 5 A. 36; *Risher v. Risher*, 194 Pa. 164, 170, 45 A. 71; *Chestnut St. Trust & S. F. Co. v. Hart*, 217 Pa. 506, 512, 66 A. 870; *Lorch's Est.*, 284 Pa. 500, 508, 131 A. 381; *Phila., to use, &c. v. Tradesmen's Trust Co.*, 38 Pa. Superior Ct. 286; *Groff v. City S. F. & Trust Co.*, 46 Pa. Superior Ct. 423, 427.

Judge CARDOZO, when Chief Judge of the Court of Appeals of New York, referred with approval to the rule in Clayton's Case in *Carson v. Federal Reserve Bank*, 254 N. Y. 218, 172 N. E. 475,—where the facts were very similar to those in this case—, as follows: "To determine whether the balance has been used up, the court applied the rule in *Clayton's Case*, 1 Mer. 572, 604, 608, whereby 'the successive payments and credits' are to be appropriated 'in discharge of the items of debt antecedently due in the order of time in which they stand in the account', the first payments out extinguishing the first payments in......We have no thought to suggest that this or any other formula as to the application of payments to the items of an account

---

[1] But in some of the opinions, reference is made to Greenleaf on Evidence, in which "Clayton's Case in Devaynes v. Noble, 1 Meriv. 605" is cited in the author's notes in connection with the appropriation of payments by law. See 2 Greenleaf on Evidence, sec. 533.

is of such inflexible validity as to admit of no exceptions......None the less, the formula is expressive of a rule that must prevail in the absence of persuasive reasons for qualification or exception. We cannot fairly say that justice will be thwarted if the rule is followed here." (p. 480).

That case runs counter to the appellant's argument that the rule applies only when the accounts credited have actually been collected or paid in cash.

3. As we have said, there is no evidence in this record that The Philadelphia National Bank knew that Bankers Trust Company was merely the agent of the plaintiff for collection of the warrant; the stipulation of counsel, while admitting the averments in the plaintiff's statement of such agency, for the purposes of the rule for judgment for want of a sufficient affidavit of defense, specifically provided that it should not "be construed to imply that the defendant had knowledge of the facts thus averred in the plaintiff's statement of claim."

Accepting the fact that such agency existed, the cases cited by the appellant and relied on to secure a reversal of the judgment are, when applied to the facts of this case, favorable to appellee. In *Jones & Co. v. Milliken & Son,* 41 Pa. 252, *First National Bank of Clarion v. Gregg,* 79 Pa. 384, and *Hackett v. Reynolds, Lamberton & Co.,* 114 Pa. 328, 6 A. 689, demand was made upon the agent by the rightful owner of the proceeds of collected commercial paper *before* the agent had paid the money to the apparent, but not actual, owner thereof. In the present case demand was not made until after the defendant had paid out the proceeds to Bankers Trust Company and delivered the excess collateral held by it to the Secretary of Banking, in charge of the trust company's affairs. But even in those cases it was recognized "that if the collecting bank regarded and treated the remitting bank as the owner of the negotiable paper which it transmitted for collection, and had no notice

to the contrary, and, upon the credit of said remittances, *made or anticipated* in the usual course of dealing, balances were from time to time suffered to remain in the hands of the remitting bank, to be met by the proceeds of such negotiable paper, then the collecting bank was entitled to retain against the real owner for the balance of account due from the remitting bank": *Jones & Co. v. Milliken & Son,* supra, p. 255. "If it [the collecting bank] had made advances or given *new credits* to Brady & Co. [or Penn Bank] on the faith of the note, it would undoubtedly be entitled to retain the amount out of the proceeds": *First Nat. Bank of Clarion v. Gregg,* supra, p. 386; *Hackett v. Reynolds, Lamberton & Co.,* supra, p. 334. In the present case, credit was given Bankers Trust Company for the proceeds of the warrant, on the faith of the check defendant had accepted for it, and the trust company was permitted to draw out the proceeds before the check which The Philadelphia National Bank had accepted from the city treasurer had actually been paid, and it was, therefore, entitled to retain, as its own property, the proceeds when paid. By the course of dealing between the trust company and the bank, the bank had, in effect, collected the warrant and remitted the proceeds to the trust company, while the latter was still open and doing business as a solvent institution, by crediting the trust company with the check it had accepted from the city treasurer instead of cash and permitting the trust company to draw out the proceeds in money. It was on this theory that the plaintiff must have obtained the order on the Secretary of Banking, directing him to pay over to plaintiff the amount of the warrant after The Philadelphia National Bank had delivered to the Secretary the collateral remaining in its hands after payment of its debt, the value of which exceeded $17,799.

In our opinion, viewing the case in the light most favorable to appellant, it is ruled against it by *Eller v. First National Bank,* 55 Pa. Superior Ct. 33. This

court there held, distinguishing the case on its facts from *First National Bank of Clarion v. Gregg,* supra, and *Hackett v. Reynolds, Lamberton & Co.,* supra, that where the apparent owner and holder of a draft deposits it with a bank for collection, and the bank after collecting the draft honors various checks of the apparent owner until they aggregate an amount in excess of the proceeds of the draft, so that the apparent owner is indebted to the bank, the real owner, of whom the bank had no notice, who had not received the proceeds cannot thereafter compel the bank to pay the amount of the collection to himself.

4. Defendant bank, having no knowledge of the dealings between Bankers Trust Company and Fischbach & Moore, Inc., was likewise justified in paying over to the Secretary of Banking in charge of Bankers Trust Company's affairs any excess of collateral remaining in its hands after payment of the trust company's indebtedness to it, before any notice of claim or demand was made upon it by plaintiff. Defendant was not required to do more than turn over to the receiver in charge of the trust company any securities remaining in its hands after the discharge of the trust company's indebtedness, leaving to such receiver the duty of making legal distribution thereof in accordance with the orders of the court having jurisdiction of his accounts. Furthermore, no real injury was done plaintiff by paying out the proceeds of the warrant to Bankers Trust Company on December 20, 1930; for if it had not done so, and had in its hands the proceeds of the warrant when Bankers Trust Company closed its doors, it would have been justified in paying the money to the Secretary of Banking, as receiver of Bankers Trust Company for legal distribution, before it received notice of plaintiff's claim, and the amount of the collateral left in its hands after payment of the trust company's indebtedness to it would have been correspondingly reduced.

As the matter was not raised by the appellee, we

shall lay no stress on the apparent inconsistency of the plaintiff in securing an order from the court of common pleas having jurisdiction of the Secretary of Banking, as receiver of Bankers Trust Company, requiring him to pay over to it the principal of said warrant—which could only be done on the theory that the money was in the possession of the trust company when it closed its doors or came into the possession of the receiver, when the defendant bank turned over to him the collateral in its possession remaining after payment of the trust company's indebtedness to it—, and at the same time pressing its action against the bank for interest on this fund, which could only be based on the theory that the fund still remained in the possession of the bank.

For the reasons above set forth we are of opinion the judgment must be affirmed. We deem it unnecessary to discuss the additional arguments advanced by appellee in support of the judgment.

The judgment is affirmed.