## Lightfoot, Appellant, *v.* Bunnel et al.

*Banks—Banking—Negotiable   instruments—Checks—Collection —Lien of collecting bank.*

A bank which receives a check for collection from another bank and gives the latter credit therefor, against which the forwarding bank checks in excess of such credit, is a holder in due course and also has a lien on the check.   Under such circumstances it is immaterial that the check was deposited with the forwarding bank for collection, and that it failed, before the collecting bank was actually in the possession of the funds.

Where a check was deposited with a bank for collection, which, after sending it to an intermediate bank and receiving credit therefor, failed, the depositor of the check cannot restrain the collecting bank from receiving the proceeds of the check and reimbursing itself.   In such case the depositor must bear the result of the insolvency of her agent.

Argued March 8, 1921.   Appeal, No. 18, March T., 1921, by plaintiff, from decree of C. P. Lackawanna County, sitting in equity, November Term, 1915, No. 5, dismissing bill in equity in the case of Anna Lightfoot v.

468, (1921).]      Statement of Facts—Arguments.

Willard M. Bunnel, Trustee, and Willard M. Bunnel and Hugh J. Evans, Receivers of Adolph Blau, as Individual Bankrupt, and Adolph Blau, trading as the Blau Banking House, Bankrupt, and the West Side Bank of Scranton. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Affirmed.

Bill in equity to compel the delivery of a check. Before NEWCOMB, J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the bill. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various requests for findings of fact and conclusions of law, and the decree of the court.

*Thomas P. Duffy,* for appellant.—When a bank receives a check from one of its depositors for collection it must return him the check or the money. The plaintiff was entitled to receive either her check or the money it represented: Fifth Nat. Bank v. Ashworth, 123 Pa. 212; Corn Exchange Nat. Bank v. Loan, etc., Co., 188 Pa. 330; Bank v. Manufacturing Co., 150 Ill. 336; Railway v. Johnston, 133 U. S. 567; United States Bank v. Macalester, 9 Pa. 475; Rapp v. National Security Bank, 136 Pa. 426; Farmers and Mechanics National Bank v. King, 57 Pa. 204.

*John P. Kelly,* and with him *Ralph W. Rymer* and *W. G. Thomas,* for appellee.—When a bank makes advances or gives new credit on the faith of a check it becomes entitled to a lien upon such paper and the proceeds thereof: Blairsville National Bank v. Crabbs, 44 Pa. Superior Ct. 454; National Bank of Phœnixville v. Bonsor, 38 Pa. Superior Ct. 275; St. Louis & San Francisco R. Co. v. Johnson, 133 U. S. 566, 33 L. Ed. 693.

OPINION BY HENDERSON, J., April 18, 1921:

The plaintiff, holding a check for $1,000 drawn on the Hamilton Trust Company of New York, payable to her order, deposited it in the Blau Banking House, a private bank doing business in the city of Scranton. The plaintiff alleges she deposited it for collection. The Blau Banking House deposited the check with others, on the same day, in the West Side Bank of Scranton in which it kept an account and received credit therefor, and from the latter bank at the same date checked out a sum in excess of the amount so deposited, and in excess of the credit which it then had in the West Side Bank. The Blau Banking House failed on the following day, whereupon the plaintiff caused notice to be served on the Hamilton Trust Company not to pay the check when presented, pursuant to which notice, payment was refused and the check returned to the West Side Bank by which it had been forwarded for collection. Thereupon the plaintiff filed a bill against the receivers of the Blau Banking House and against the West Side Bank praying for a decree that the latter bank surrender and deliver up the said check to the receivers of the Blau Banking House, and that they surrender and redeliver to the plaintiff the said check on the payment to them by the plaintiff of the sum of $175. The trial judge dismissed the bill, and from that decree we have this appeal. The real controversy in the case is between the plaintiff and the West Side Bank; the latter defending its possession of the check on the ground that it was taken in due course for value without notice of any infirmity. This defense the court sustained and if the decree is supported by evidence, it must stand however unfortunate the plaintiff may be in having intrusted her business to a banking institution which proved to be insolvent. It is not controverted that the check was negotiable in form, and the plaintiff admits that it was delivered to the Blau Banking House for the purpose of collecting the money. The plaintiff's object was to receive the amount

called for by the check. The evidence is strongly persuasive that she received credit in the bank for the amount of the check. She drew $175 at that time and took a deposit book as was customary in the case of depositors entering or maintaining a deposit account. If that were the state of facts, her only redress is against the concern to which she gave credit. The position taken by the West Side Bank is that whatever may have been the circumstances of the placing of the check in the Blau Banking House, the West Side Bank is only affected by that of which it had notice, and that it received the check from the Blau Banking House in the regular course of business and paid full value therefor by crediting that house with the full amount of the check as a cash deposit, as well as a large amount in excess thereof; all of which was checked out by the Blau Banking House by checks duly drawn on the West Side Bank, as a result whereof the whole sum of $1,000, the amount of plaintiff's check, was paid to the Blau Banking House together with a large sum in excess thereof, and that the West Side Bank had no knowledge of any defect in the title of the Blau Banking House to the plaintiff's check at the time it received the same. The court found and the evidence shows that the West Side Bank received the check in due course for value without any knowledge on the part of said bank of the circumstances under which the same was received from the plaintiff by the Blau Banking House, and that the West Side Bank became an innocent holder of the check and was the legal owner thereof. There can be no doubt that the purpose which the plaintiff had in leaving her check with the Blau Banking House was accomplished when that bank received the proceeds of the check from the West Side Bank. The institution which the plaintiff intrusted with her business received payment on the check and if it had been solvent, she would have had credit for that amount. It was not important to the plaintiff whether the money came directly from the Hamilton Trust Company or

some intermediate bank; the material matter to her was that she receive the money and as she had made the Blau Banking House her agent to accomplish that result when it received the amount of the check from the West Side Bank, her purpose was carried out. She is not in a situation to complain that the money was procured from an intermediate bank. According to her own testimony, the Blau Banking House promised to have the money for her in two days, and it was a matter of no consequence to her whether it was advanced by a bank which took the check in the regular course of business or by the bank against which the check was drawn. On the facts found the decision of the trial court was well taken. · Whether the West Side Bank be considered the owner of the check or the holder on a lien against the instrument, the result is the same. The 26th section of article II of the Negotiable Instruments Statute provides that where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time. Section 27 provides that where the holder has a lien on the instrument arising either from contract or by implication of law he is deemed a holder for value to the extent of his lien. As the West Side Bank credited the Blau Banking House with the full value of the check, it is entitled to the possession of the same therefore whether such possession be as endorsee or as the holder on a lien. That the West Side Bank is a holder in due course under section 52 of article IV of the statute is found by the court and established by the evidence. We held in National Bank of Phœnixville v. Bonsor, 38 Pa. Superior Ct. 275, that where a bank accepts a check for collection and gives a depositor credit for it, and the latter draws against his account to an amount which reduces the apparent balance below the amount of the check, the bank has a lien for the amount of the overdraft, and to that amount is a holder for value, and may recover to such extent against the maker of the check.

468, (1921).]          Opinion of the Court.

This is the doctrine of First National Bank of Clarion v. Gregg, 79 Pa. 384; Bank of the Metropolis v. New England Bank, 42 U. S. 234; St. Louis & San Francisco R. Co. v. Johnson, 133 U. S. 566; and numerous other cases. As there is no dispute about the fact that the Blau Banking House received credit in the West Side Bank for the check in question and largely overdrew its account there, the case falls within the principle expressed in the statute and announced in the cases cited.  If the check had been forwarded by the Blau Banking House and the money had been paid to the collecting bank, but not returned to the Blau Banking House before its failure, a different question would arise where it was made to appear that the Blau Banking House was insolvent at the time it took the plaintiff's check and that such taking was a fraud on the depositor.  Under such circumstances it might well be claimed the fund collected did not belong to the creditors of the Blau Banking House, but in the case we are considering, the money was actually received by that bank in accomplishment of the purpose for which the plaintiff gave it the check.  The decree of the learned court is well supported by the evidence and the law.

The appeal is therefore dismissed at the cost of the appellant.