## The Real Estate-Land Title and Trust Co. v. Butler et al.

*Charles I. Thompson* and *Boyd Lee Spahr* (of *Ballard, Spahr, Andrews & Ingersoll*), for plaintiff.

*Robert T. McCracken* (of *Roberts & Montgomery*), for defendants.

BROWN, JR., J., Oct. 24, 1928.—This is an action by the Real Estate-Land Title and Trust Company, endorsee of a check in the amount of $20,502, against the makers, J. Russell Butler, Alexander J. McConnell, Charles A. Zubrod and W. J. McGlinn, as copartners trading as McGlinn & Company.

The check was drawn to the order of Guy C. Lamson, who endorsed and deposited it in the plaintiff bank. The latter forwarded it to the Fourth Street National Bank for collection, and when it was presented for payment to the West End Trust Company, upon which it was drawn, payment was refused. Thereupon plaintiff brought this suit, alleging that it was a holder of the check in due course, which was denied in the affidavit of defense, wherein it was averred that plaintiff received it only for collection. The verdict being in favor of the plaintiff, the present motion for judgment *n. o. v.* was filed.

It appears that the payee, Lamson, had a deposit account with the plaintiff bank; that there was a credit balance in his favor as of the close of business on Nov. 19, 1925, in the amount of $57,572.27; that on Nov. 20, 1925, he deposited checks totaling $40,391.22, including the defendants' check, which, with the balance from the previous day, made the total of deposits $97,963.49, and that on the same day plaintiff honored checks previously drawn by him and presented to plaintiff for payment, amounting to $117,707.90. Thus, an overdraft of $19,744.41 resulted. Lamson had also a collateral loan account with the plaintiff on which he owed approximately $99,000, the collateral being assumed to be worth 20 per cent. in excess of the debt and so sufficient to care for an overdraft, which developed not to be the fact upon disposal of the collateral.

Defendants' check was deposited by Lamson in the plaintiff bank on Nov. 20, 1925, about 12 o'clock noon, or shortly before, according to the plaintiff's witnesses, and a little after noon, according to the defendants' witnesses. The check left the plaintiff bank and was received by the Fourth Street National Bank before 1.20 in the afternoon of that day. It appears, also, that on that day there were two deliveries of checks to plaintiff from the clearing house, one about 8.30 A. M., and the other about 11 A. M., in which were included the checks, totaling $117,707.90, drawn by Lamson on his account with plaintiff; that plaintiff had until 2 P. M. to dishonor any of these checks thus received through the clearing house, and that they were paid. But there was no testimony showing exactly the hour when they were paid.

The jury was instructed, *inter alia,* as follows:

"Members of the Jury, the question for you to determine is as to whether or not the plaintiff company honored any or all of these checks drawn on Lamson's account, that is, any of the amount totaling $117,707.90, upon the faith and credit of this check of the defendants in the amount of $20,502.00. In that connection, you have to consider and determine from the evidence which you have heard as to the time when that check was deposited whether or not the plaintiff extended credit on the faith thereof, that is, whether the checks which were cashed for Lamson were after that check had been received.

"When a bank credits a customer, as Lamson was, with the amount of a check endorsed by him in blank, as it was in this case, deposited in his account, the bank does not, in the absence of a special agreement, from this fact standing alone become a holder of the paper for value. The title to the check remains in the depositor, and when that paper is dishonored the bank may charge it back to the depositor without taking the steps necessary to hold him as endorser. The relation arising from such transaction as between the bank and the depositor is that the former becomes the agent of the latter for the purpose of collection.

"It is also the law that when a bank makes advances or gives new credit on the faith of a check or other commercial paper which a customer has deposited

for collection and for which he has received credit in his account, it becomes entitled to a lien upon such paper and the proceeds thereof for the amount it has advanced.

"When the plaintiff bank paid checks for Lamson totaling $117,707.90, which reduced the balance below the amount covered by this check for $20,502.00, it is fair to presume that this extension of credit was based upon the state of its account, which included the very check now in question, and it is for you to determine whether, from the evidence or not, this presumption is justified. That is a question for you to decide as to whether or not the defendant's check went into the account in the plaintiff's bank before certain of the other checks drawn, totaling some $117,000.00, were paid or honored."

The foregoing is in accordance with the principles enunciated in National Bank of Phœnixville v. Bonsor, 38 Pa. Superior Ct. 275, 280; Erisman's Appeal, 1 Pa. Superior Ct. 144, 148; Lightfoot v. Bunnel, 76 Pa. Superior Ct. 468, 472, except that, notwithstanding the presumption that the "extension of credit was based upon the state of its account, which included the very check now in question," the jury was permitted to determine whether, from the evidence, such presumption was justified, that is, whether or not defendants' check went into the account in the plaintiff's bank before the checks were paid or honored. This was favorable to the defendants, in that, there being such a presumption, and, therefore, the burden being upon them to rebut it, the jury was not so instructed.

Defendants contend, however, that evidence that checks totaling $117,707.90 came into the plaintiff about 8.30 and 11 o'clock in the morning is not sufficient to show that they were paid on the faith of the defendants' check, which was not deposited until about noon of that day, and, therefore, the jury had nothing upon which to answer the question put to them for determination as to whether or not plaintiff honored any of the checks upon the faith or credit of defendants' check. There was testimony, however, that it is the practice or rule of the bank to honor checks on the strength of the balance of the deposits and to examine checks deposited before honoring those which would result in an overdraft, and that the bank had until 2 o'clock to dishonor any checks, and that none was dishonored. Furthermore, there being a presumption that credit was extended based upon the state of the account, *the burden was upon the defendants* to rebut it and to show that plaintiff did *not* honor the checks totaling $117,707.90 upon the credit of the check in suit. This burden was not met by them, for there is no evidence that Lamson's checks were honored before the defendants' check was deposited.

Defendants contend, also, that the plaintiff received the check from Lamson, its depositor, only for collection, relying upon the clearing house rules to that effect, copy of which appeared in Lamson's bank book. There was testimony, however, that it is the custom in Philadelphia to honor checks drawn by a depositor against uncollected funds within the discretion of the bank, taking into consideration previous conditions of the account, the particular check which is being considered and certain other elements which are not necessary to mention. Although the bank or pass book defines the arrangement between the bank and depositor, to which the defendants were not parties, yet it indicates the conditions under which plaintiff received the defendants' check, to wit, for collection. Nevertheless, there is no evidence indicating any infirmity attached to defendants' check when given to Làmson, and none when held by plaintiff, or that the latter had notice of any when it was negotiated to it. "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value:" Section 24 of

the Negotiable Instruments Act of May 16, 1901, P. L. 194. "Hence, when the check was received by plaintiff, it had, as against defendants, at least a *prima facie* right to recover the full amount of it. Admittedly, this right existed to the extent of a sufficient sum to balance the account:" Mutual Trust Co. *v.* Parrish, 276 Pa. 422, 425, in which case the makers of a check were sued by the bank in which the payee had deposited the check and over-drawn his account, thus presenting the same situation as in the present case, and not as in Bank of Wesleyville *v.* Rose, 85 Pa. Superior Ct. 52, where suit was against a depositor. "The plaintiff made out a *prima facie* case by the presentation of the check with its endorsement and the certificate of protest for non-payment; the burden was, therefore, upon the defendant. The defendant undertook to meet that burden by proving a failure of considera-tion as between the maker and the drawee of the check, and that the plaintiff was not a holder for value:" National Bank of Phœnixville *v.* Bonsor, *supra,* at page 279. But here defendants did not aver failure of consideration between the maker and the payee, and, therefore, there being no proof of such failure, the verdict was proper.

Therefore, defendants' motion for judgment *n. o. v.* is dismissed.