### Lipschutz v. Phila. Savings Fund Society et al., Appellant.

482

Argued October 6, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*John Kennedy Ewing, 3d* of *Saul, Ewing, Remick &
Saul,* for appellant, cited: McKinley v. Wainstein, 81
Pa. Superior Ct. 596; Real Estate-Land Title & Trust
Co. v. Butler, 296 Pa. 54; National Bank of Phoenix-
ville v. Bonsor, 38 Pa. Superior Ct. 275.

*Ullman and Dicken,* for appellee.

OPINION BY TREXLER, P. J., January 25, 1933:

Bill in equity. It appears that Lipshutz on October
1, 1931 deposited for collection in the Olney Bank and
Trust Company two checks drawn on the Central-Penn
National Bank. On the same date the Olney Bank
transferred to the Pennsylvania Company for Insur-
ances on Lives and Granting Annuities, the defendant,
the checks in question containing the endorsement,
"pay any bank, banker or trust company," and re-
ceived the full consideration of the same from the
Pennsylvania Company. On the following day the
Olney Bank was closed by the Secretary of Banking
of Pennsylvania. Plaintiff being unable to get the
proceeds of the checks secured the intervention of the
maker and caused payment to be stopped. The case
was heard on bill and answer. The court entered a
decree enjoining the present holder of the checks, the
Pennsylvania Company, from presenting them for pay-
ment at the bank on which they were drawn and
furthermore, directed the company immediately to de-
liver them to the plaintiff free of charge. The court
based its decision in favor of the plaintiff on the words
of the endorsement on each check "pay any bank,

banker or trust company, to the order Olney Bank and Trust Company.''

Section 4 of the Act of June 12, 1931, P. L. 568 provides that an endorsement ''pay any bank or banker'' shall be deemed ''a restrictive endorsement,'' and shall indicate the creation of an agency relation in any subsequent bank to whom the paper is forwarded. The lower court calls attention to Section 36 of the Act of May 16, 1901, P. L. 194, which defines ''a restrictive endorsement'' as one which either, first, prohibits any further negotiation of the instrument, or second, constitutes the endorsee the agent of the endorser, or third, vests the title in the endorsee in trust. It concludes therefore that the Olney Trust Company had no right to negotiate these checks to the Pennsylvania Company, and that the latter was bound by the restrictive endorsement, and had no right to presume that the Olney Bank was the owner of the checks and could pass title to them. The learned chancellor overlooked the fact that in the above definition there are three alternative characteristics of a restrictive endorsement, and that they do not all apply to every such endorsement. Which one of them applies must be determined by the form of the endorsement. We, however, pass this for we need not go back as far as the Act of 1901 to ascertain what is meant by the endorsement on the check of the words ''pay any bank or banker,'' for the Act of 1931, in the part to which the lower court refers states clearly that the words ''indicate the creation of any agency relation in a subsequent bank to whom the paper is forwarded.'' They are employed to show the status between the banks not between the depositor and the forwarding bank. The checks in the present instances originally had the blank endorsements, the restrictive endorsement was placed by the forwarding bank and it constituted the endorsee bank the agent of the forwarding bank. There is no question that the Olney Bank was the

agent of the plaintiff who deposited the checks: Hazlett v. Commercial Bank, 132 Pa. 118, 19 Atl. 55; National Bank of Phoenixville v. Bonsor, 38 Pa. Superior Ct. 275; Hotel Statler v. Girard N. Bk., 89 Pa. Superior Ct. 537. When the Olney Bank got the money for the checks its duty was done, all but paying it over. For failure to do so it alone was responsible. The fact that the Pennsylvania Company received the checks for collection and thus became the agent for the forwarding bank did not prevent it from acquiring title. The obtaining of the money represented by the checks was the very purpose of the agency, and when the Pennsylvania Company in furtherance of that purpose paid the amount called for by the checks it thus became the owner of them in due course. Its whole duty was performed, and it acquired the right to sue in its own name for the amount represented by them: McKinley v. Weinstein, 81 Pa. Superior Ct. 596 and cases there cited. There is no question that the bank receiving the checks or any subsequent bank to which the checks would have been forwarded were chargeable with the duty to assist in the collection of the same. Plaintiff owned the checks and continued to own them until the purpose of their transfer to the bank where they were deposited was accomplished: Jacobs v. Mohnton Trust Co., 299 Pa. 527, 530, 149 Atl. 887. When the amount of the checks was collected, it matters not from whom, the ownership of the plaintiff ceased. The loss occurred after plaintiff's agent had collected the money. In Lightfoot v. Bunnel, 76 Pa. Superior Ct. 468, a case which very strongly resembles the present, this court said, "The institution which the plaintiff entrusted with her business received payment on the check and if it had been solvent she would have had credit for that amount. It was not important to the plaintiff whether the money came directly from the Hamilton Trust Company or some intermediate bank; the material matter to her was

that she receive the money and as she had made the Blau Banking House her agent to accomplish that result when it received the amount of the check from the West Side Bank her purpose was carried out. She is not in a situation to complain that the money was procured from an intermediate bank.''

Being insolvent the officers of the Olney Bank should not have accepted the checks for collection, and when the money was received for the checks they should have set it apart in a separate account and earmarked it. This was not done. The bank became a trustee exmaleficio as to the money thus received and mingled with its own funds: Cameron v. Carnegie Trust Co., 292 Pa. 114, 140 Atl. 768. Section 13 paragraph 1 of the Act of 1931 supra gives ample protection in this regard to the person who has put a check in for collection in a bank which has failed before the money was turned over to him.

The decree of the court below is reversed and plaintiff's bill in equity is dismissed at his cost.