MYER SHAPIRO & another *vs.* SIOUX CITY DRESSED BEEF INC., LIVE STOCK NATIONAL BANK, CLAIMANT.

Suffolk.    May 5, 1958. — June 18, 1958.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Bills and Notes,* Collection, Transfer of title.    *Conflict of Laws. Bank and Banking.*

The legal effect of a deposit of a draft in an Iowa bank upon the title to the draft and funds collected thereunder must be determined by Iowa law.  [720]

By the law of Iowa, a bank there which, upon deposit in a checking account of a draft payable to the bank drawn by the depositor, credited the account with the amount of the draft and allowed the depositor to draw against it immediately, received the draft as a purchaser and not merely as an agent of the depositor for collection, notwithstanding statements on the deposit slip accompanying the draft that the bank acted "only as depositor's collecting agent," that all items were credited "subject to final payment," and that it might "charge back" any uncollected items; and the Iowa bank, upon forwarding of the draft for collection to a Massachusetts bank and receipt by the Massachusetts bank from the drawee of funds which were thereupon trusteed in an action of trustee process against the Iowa depositor, was entitled to the trusteed funds.  [721]

CONTRACT. Writ in the Superior Court dated November 7, 1956.

Live Stock National Bank of Sioux City, Iowa, intervened as claimant.

The case was heard by *Dewing, J.*, who dismissed the claimant's petition. The claimant alleged exceptions.

*Robert W. Weinstein,* for the claimant.

*Paul L. Keenan & Leon Aborn,* for the plaintiffs, submitted a brief.

WILLIAMS, J. The immediate issue in this case is the title of Live Stock National Bank of Sioux City, Iowa, to a fund of $750 held by Rockland-Atlas National Bank of Boston under trustee process. The fund represents the balance of moneys collected by the Rockland-Atlas bank on a draft in the sum of $5,711.40 dated October 29, 1956, drawn by the defendant on City Packing Co., 115 New Market Square, Boston, and payable to the Iowa bank. It was deposited on that date, accompanied by an order bill of lading, by the defendant in its checking account in the Iowa bank in Sioux City. The deposit slip read: "Items received for deposit or collection are accepted on the following terms and conditions. This bank acts only as depositor's collecting agent and assumes no responsibility beyond its exercise of due care. All items are credited subject to final payment and to receipt of proceeds of final payment in cash or solvent credits by this Bank at its own office. . . . This Bank may charge back . . . any item drawn on this Bank which is ascertained to be drawn against insufficient funds or otherwise not good or payable." The bank credited the defendant with the amount of the deposit. In its dealings with the bank it was customary for the defendant to draw against deposits as soon as made and before drafts were paid or payment refused. By November 2 the defendant had withdrawn from its account the entire deposit and in fact had overdrawn its account by $1,322.48.

The draft on City Packing Co. was forwarded for collection through the Federal Reserve Bank of Boston to the Rockland-Atlas bank which received it on October 31. It

notified the drawee and received from it payment in full on the morning of November 8. A few minutes later the Rockland-Atlas bank was served as trustee with a writ in an action by trustee process which had been commenced in the Superior Court by the plaintiffs against the defendant on November 7. The ad damnum of the writ was $750. The trustee thereupon forwarded $4,961.40 to the Iowa bank and retained $750. It filed an answer as trustee on December 7 reciting the facts as to the payment of the draft. The defendant appeared specially and filed an answer in abatement on December 19 denying the court's jurisdiction on the ground that no goods, effects or credits belonging to it had been attached. On December 24 the Iowa bank moved that it be admitted as a party and that its title to the funds held by the trustee be determined. The motion respecting its admission as a party was allowed. G. L. (Ter. Ed.) c. 246, § 33. After hearing, the court found that the claimant Iowa bank never acquired title to the draft in question or to the funds under attachment and, "treating" the rest of its motion as a petition, ordered that it be dismissed.

The case is before us on exceptions of the Iowa bank to the denial of its requests for rulings, those material to the facts here presented being (1) "The law of Iowa governs the question of ownership of the draft involved in this action," and (2) "The law of Iowa governs the question of the ownership of the funds attached in this action." It is plain that the legal effect of depositing the draft in the Iowa bank must be determined by Iowa law. See *Brooks* v. *Bigelow*, 142 Mass. 6. "[T]he nature, validity, and interpretation of a contract are to be governed by the law of the place where it is made." *Thomas G. Jewett, Jr. Inc.* v. *Keystone Driller Co.* 282 Mass. 469, 475, and cases cited. *Fourth Natl. Bank* v. *Bragg*, 127 Va. 47, 60–61. The petitioner followed our rule of practice (*Eastern Offices, Inc.* v. *P. F. O'Keefe Advertising Agency, Inc.* 289 Mass. 23, 26; *Bradbury* v. *Central Vermont Ry.* 299 Mass. 230, 234) by directing the court's attention to certain pertinent Iowa cases: *City Deposit Bank* v. *Green*, 130 Iowa, 384; *Palo Alto County*

v. *Ulrich*, 199 Iowa, 1, 13; *Andrew* v. *Security Trust & Sav. Bank*, 214 Iowa, 1199.

The point for decision is whether the Iowa bank received the draft as a purchaser or merely as an agent for collection. A full discussion of the Iowa law is found in *Acme Hay & Mill Feed Co.* v. *Metropolitan Natl. Bank*, 198 Iowa, 1337. In *Palo Alto County* v. *Ulrich*, 199 Iowa, 1, 13, which is in accord with the *Acme* case it was said, "Where a customer of a bank indorses to the order of the bank checks or drafts, and is given credit for the amount thereof upon his account, as cash, and has the right to check against the credit so given, in the absence of an agreement or understanding to the contrary, or proof of circumstances from which such an understanding may be inferred, the presumption is that title to the paper passes to the bank; and the relation of debtor and creditor is created. And the mere fact that the bank has a right to cancel the credit and charge back to the customer the amount for which credit was given, if the paper is not paid, is not alone sufficient to show that it was taken for collection. The exercise of such a right is no more than the enforcement of the depositor's liability, as the drawer or indorser of dishonored paper." This case was followed by *Andrew* v. *Security Trust & Sav. Bank*, 214 Iowa, 1199, where it was held that a notice printed in a depositor's pass book, "In receiving items for deposit or collection, this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care . . . [and] may charge back any item before final payment," did not prevent the title of the deposited check passing to the bank.

In the event of a charge back the bank is not later estopped to contend that it had become absolute owner of the deposit. *Bureau Marketing Serv.* v. *Lewis*, 220 Iowa, 662, 675. *Rubio Sav. Bank* v. *Acme Farm Prod. Co.* 240 Iowa, 547, 555.

In our opinion title to the trusteed fund is by the law of Iowa vested in the Iowa bank. The court was in error in

refusing to rule as requested by the petitioner. The exceptions of the Iowa bank are sustained. Being satisfied that all facts necessary for the determination of the title to the trusteed fund are before us, judgment is directed to be entered for Live Stock National Bank in the amount of $750. G. L. (Ter. Ed.) c. 231, § 124. See *Gaston Elec. Co.* v. *American Constr. Co.* 336 Mass. 454.

*So ordered.*