89 N.J. Super. 43 (1965)
213 A.2d 315
CITIZENS NATIONAL BANK OF ENGLEWOOD, A NATIONAL BANKING CORPORATION, PLAINTIFF,
v.
FORT LEE SAVINGS AND LOAN ASSOCIATION, FORT LEE TRUST COMPANY, AND JEAN AMOROSO, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Submitted July 2, 1965.
Decided September 3, 1965.
*45 Mr. Arthur H. Reeve for plaintiff (Messrs. Reeve & Reeve, attorneys).
Mr. Vincent P. Panetta for defendant Fort Lee Savings and Loan Association (Mr. Philip G. Mahler, attorney).
Mr. Anthony J. Montforte for defendant Jean Amoroso.
*46 BOTTER, J.S.C.
Citizens National Bank of Englewood has moved for summary judgment to recover monies advanced against a check which was deposited with the bank for collection but was later dishonored. The issue is whether the bank should be protected for advances made to its depositor before the check cleared. The summary judgment is sought against the drawer and payee-indorser who stopped payment on the check.
On August 27, 1963, George P. Winter agreed to sell a house in Fort Lee, New Jersey to defendant Jean Amoroso and her husband. On the same day Amoroso requested her bank, Fort Lee Savings and Loan Association (Fort Lee Savings), to issue the bank's check to her order for $3,100 to be used as a deposit on the contract for sale. Fort Lee Savings complied by drawing the check against its account with the Fort Lee Trust Company. Later that day Amoroso indorsed and delivered the check to Winter, and he deposited the check in his account at the plaintiff bank. At that time he had a balance of $225.33. After the $3,100 check was deposited the bank cashed a $1,000 check for him against his account. In addition, on August 27 or August 28, the bank cleared and charged Winter's account with four other checks totaling $291.76.
The next day Amoroso discovered that Winter had previously sold the property to a third party by agreement which had been recorded in the Bergen County Clerk's Office. Amoroso immediately asked Winter to return her money. She claims that he admitted the fraud and agreed to return the deposit. But when Mrs. Amoroso and her husband reached Winter's office they learned that he had attempted suicide. He died shortly thereafter.
Upon making this discovery, in the afternoon of August 28, the Amorosos went to Fort Lee Savings to advise it of the fraud and request it to stop payment on the check. The bank issued a written stop payment order which was received by the Fort Lee Trust Company, the drawee, on the following day, August 29. In the meantime the $3,100 check was sent *47 by plaintiff through the Bergen County Clearing House to the Fort Lee Trust Company. By then the stop payment order had been received. Notice of nonpayment was thereafter transmitted to plaintiff.
Plaintiff contends that, under the Uniform Commercial Code, N.J.S. 12A:1-101 et seq., it is a holder in due course to the extent of the advances made on Winter's account and is entitled to recover these moneys from the drawer and payee-indorser of the check. Plaintiff's claim against the drawee, Fort Lee Trust Company, was voluntarily dismissed by plaintiff at the pretrial conference.
The central issue is whether plaintiff bank is a holder in due course, since a holder in due course will prevail against those liable on the instrument in the absence of a real defense. Of course, it must first be determined that plaintiff is a "holder" if plaintiff is to be declared a holder in due course. Amoroso contends that plaintiff bank does not own the check because it is only an agent of its depositor Winter for collection purposes and, consequently, plaintiff is not a "holder." It is true that a collecting bank is presumed to be an agent of the owner of the item unless a contrary intention appears, or until final settlement. N.J.S. 12A:4-201(1). Assuming that the bank was at all times an agent in this case, it does not follow that the bank cannot also be a holder. On the contrary, a collecting bank may be a holder whether or not it owns the item. N.J.S. 12A:4-201(1) and 12A:3-301. Pazol v. Citizens Nat'l Bank of Sandy Springs, 110 Ga. App. 319, 138 S.E.2d 442 (Ct. App. 1964); and see generally Bunn, "Bank Collections under the Uniform Commercial Code," Wis. L. Rev. 278 (1964). The definition of "holder" includes a person who is in possession of an instrument indorsed to his order or in blank. N.J.S. 12A:1-201(20). It is clear that the bank is a holder of the check notwithstanding that it may have taken the check solely for collection and with the right to charge back against the depositor's account in the event the check is later dishonored. Pazol v. Citizens Nat'l Bank of Sandy Springs, supra; accord, Citizens Bank of *48 Booneville v. Nat'l Bank of Commerce, 334 F.2d 257 (10 Cir. 1964).
To be a holder in due course one must take a negotiable instrument for value, in good faith and without notice of any defect or defense. N.J.S. 12A:3-302(1). Amoroso contends that plaintiff did not act in good faith or is chargeable with notice because it allowed Winter to draw against uncollected funds at a time when his account was either very low or overdrawn. Winter's account was low in funds. However, this fact, or the fact that Winter's account was overdrawn, currently or in the past, if true, would not constitute notice to the collecting bank of an infirmity in the underlying transaction or instrument and is not evidence of bad faith chargeable to the bank at the time it allowed withdrawal against the deposited check. N.J.S. 12A:1-201(19) and (25); N.J.S. 12A:3-304. See United States Cold Storage Corp. v. First Nat'l Bank of Fort Worth, 350 S.W.2d 856 (Tex. Civ. App. 1961), declaring the bank a holder in due course where it applied a deposited check against a large overdraft of its depositor, the court specifically holding that lack of good faith was not shown merely by the fact that the bank knew the depositor was considerably overdrawn in his account. As stated in First Nat'l Bank of Springfield v. DiTaranto, 9 N.J. Super. 246, 253 (App. Div. 1950):
"Evidence of fraud, not merely suspicious circumstances, must have been brought home to the Bank as a holder for value whose rights had accrued before maturity, in order to defeat its recovery upon the ground of fraud in the inception of the negotiable note or between the parties to it. Hudson County Nat. Bank v. Alexander Furs, Inc., supra [133 N.J.L. 256]. To constitute notice to the Bank of the alleged infirmity in the note or defect in the title of Tidey who negotiated it, the Bank must have had actual knowledge of the infirmity or defect or knowledge of such facts that the action amounted to bad faith."
Moreover, a depositary bank may properly charge an account by honoring a check drawn by a depositor even though it creates an overdraft. N.J.S. 12A:4-401(1). It would be *49 anomalous for a bank to lose its status as a holder in due course merely because it has notice that the account of its depositor is overdrawn.
Lacking bad faith or notice of a defect or defense, plaintiff will be deemed a holder in due course if one additional element is satisfied, namely, the giving of value for the instrument. Prior to the adoption of the Uniform Commercial Code the general rule was that a bank does give value and is a holder in due course to the extent that it allows a depositor to draw against a check given for collection notwithstanding that the check is later dishonored. Shapiro v. Sioux City Dressed Beef, Inc., 337 Mass. 718, 151 N.E.2d 492 (Sup. Jud. Ct. 1958); Bath Nat'l Bank v. Ely N. Sonnenstrahl, Inc., 249 N.Y. 391, 164 N.E. 327 (Ct. App. 1928); First Nat'l Bank of Somerset County v. Margulies, 35 Misc.2d 332, 232 N.Y.S.2d 274 (Sup. Ct. 1962); Pike v. First Nat'l Bank of Rome, 99 Ga. App. 598, 109 S.E.2d 620 (Ct. App. 1959); Bank of America v. Dade Fed. S & L Ass'n of Miami, 154 So.2d 191 (Fla. D. Ct. App. 1963); Sorrells Bros. Packing Co., Inc. v. Union State Bank, 144 So.2d 74 (Fla. D. Ct. App. 1962); United States Cold Storage Corp. v. First Nat'l Bank of Forth Worth, supra; Note, "Negotiable Instruments  Bank as Purchaser for Value," 20 Colum. L. Rev. 351 (1920); Note, "A Bank as a Holder for Value of Deposited Negotiable Instruments," 72 U. Pa. L. Rev. 61 (1923); Note, "Bills and Notes  Holder in Due Course  Check Deposited with Bank for Collection," 17 Mich. L. Rev. 703 (1919); Annotation, "Crediting proceeds of negotiable paper to depositor's account, as constituting bank a holder in due course," 59 A.L.R.2d 1173 (1958). The cases clearly hold that this rule applies even though the item is received for collection only under an agreement with the bank that gives the bank the right to charge back against the depositor's account the amount of any item which is not collected. It is sometimes said that the contract of conditional credit is changed when the bank honors the deposit by allowing a withdrawal, and the bank then becomes the owner of or holder of a lien on the *50 item to the extent of value given. Note, 17 Mich. L. Rev., supra; Shapiro v. Sioux City Dressed Beef, Inc., supra; First Nat'l Bank of Somerset County v. Margulies, supra; Sorrells Bros. Packing Co. v. Union State Bank, supra; and see Bath Nat'l Bank v. Ely N. Sonnenstrahl, supra, 249 N.Y., at p. 394, 164 N.E., at p. 328, where the New York Court of Appeals said that the bank becomes a holder in due course in these circumstances and, "At least it may then hold the instrument as collateral security."
This result is continued by provisions of the Uniform Commercial Code which give plaintiff a security interest in the check and the monies represented by the check to the extent that credit given for the check has been withdrawn or applied. N.J.S. 12A:4-208 and 209. See also N.J.S.A. 12A:4-201 and U.C.C. Comment 5 thereunder.
N.J.S. 12A:4-208 provides in part as follows:
"(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either
(a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied;
(b) in case of an item for which it has given credit available for withdrawal as of right, to the extent of the credit given whether or not the credit is drawn upon and whether or not there is a right of charge-back; or
(c) if it makes an advance on or against the item."
N.J.S. 12A:4-209 is as follows:
"For purposes of determining its status as a holder in due course, the bank has given value to the extent that it has a security interest in an item provided that the bank otherwise complies with the requirements of 12A:3-302 on what constitutes a holder in due course."
The New Jersey Study Comment under N.J.S. 12A:4-209 includes the following:
"Because the bank is a holder of the item in most cases, it is possible for it to be a holder in due course if it otherwise qualifies by its good faith taking, prior to maturity, for value. See, U.C.C. sec. 3-302; N.I.L. sec. 52 (N.J.S.A. 7:2-52). It is important for a bank to be a holder in due course when the depositor fails, for this status enables *51 it to prevail over the obligor (drawer or maker) of the instrument even though the obligor has some personal defense against the payee (depositor)."
It would hinder commercial transactions if depositary banks refused to permit withdrawal prior to clearance of checks. Apparently banking practice is to the contrary. It is clear that the Uniform Commercial Code was intended to permit the continuation of this practice and to protect banks who have given credit on deposited items prior to notice of a stop payment order or other notice of dishonor. N.J.S. 12A:4-208 and 209, supra; Pazol v. Citizens Nat'l Bank of Sandy Springs, supra; Citizens Bank of Booneville v. Nat'l Bank of Commerce, supra; see also Universal C.I.T. Credit Corp. v. Guaranty Bank & Trust Co., 161 F. Supp. 790 (D.C. Mass. 1958); Trumbull, "Bank Deposits and Collections in Illinois Under the Proposed Uniform Commercial Code," 55 Nw. U.L. Rev. 253, 270-272 (1960); Penney, "Uniform Commercial Code: Symposium  A Summary of Articles 3 and 4 and Their Impact in New York," 48 Cornell L.Q. 47, 58-59 (1962).
It is also contended that liability on the check is excused because N.J.S. 12A:4-403 gives Fort Lee Savings the right to order Fort Lee Trust Company to stop payment on the check. However, U.C.C. comment 8 under this section makes it clear that the stop payment order cannot avoid liability to a holder in due course. "The payment can be stopped but the drawer remains liable on the instrument to the holder in due course * * *." See Carhart v. Second Nat'l Bank, 98 N.J.L. 373 (Sup. Ct. 1923).
Finally, Amoroso attempts to raise the fraud perpetrated by Winter against Amoroso as a defense to plaintiff's claim. Plaintiff's status as a holder in due course insulates it from all personal defenses of any party to the instrument with whom it has not dealt, although real defenses may still be asserted. N.J.S. 12A:3-305. The defense raised here is fraud in inducing Amoroso to enter into the contract. There is no suggestion that either defendant signed the check *52 without knowledge of "its character or its essential terms." N.J.S. 12A:3-305(2) (c). Therefore the fraud is a personal defense available only against Winter and cannot be asserted against plaintiff. See Bancredit, Inc. v. Bethea, 65 N.J. Super. 538 (App. Div. 1961); Meadow Brook Nat'l Bank v. Rogers, 44 Misc.2d 250, 253 N.Y.S.2d 501 (D. Ct. 1964).
Accordingly both Fort Lee Savings as drawer and Amoroso as indorser of the check are liable to plaintiff. N.J.S. 12A:3-413(2) and 12A:3-414(1), defining the liability of a drawer and indorser of a negotiable instrument to a holder in due course.
The motion for summary judgment will be granted in the sum of $1,066.43, plus interest. The amount of the judgment represents advances made on Winter's account before notice of dishonor, $1,291.76, less the existing balance of $225.33 in Winter's account. This opinion will not deal with the disposition of claims between Amoroso and Fort Lee Savings. By reason of the stop payment order Fort Lee Savings has on hand sufficient funds which were charged against Amoroso's account to meet plaintiff's judgment, and part of these funds, representing the difference between the potential judgment and the $3,100 retained, has been refunded to Amoroso pursuant to the pretrial order.