## United Credit Corporation v. Necamp

Before Monroe, *P. J.*, Mountenay and Walsh, *JJ*.

*Mark S. Levy*, for plaintiff.
*Harry C. Liebman*, for defendant.

MONROE, *P. J.*, February 25, 1976—This is an action on a promissory note in the amount of $7,000. The case was tried before the undersigned, sitting without a jury, who found plaintiff to be a holder in due course of the note in question and entered a verdict in favor of plaintiff and against defendant in the sum of $7,000. Defendant filed written exceptions (Pa.R.C.P. 1038(d)) to the finding and verdict and to the trial judge's rulings with respect to proffered testimony by Alfred Weintraub, Esq., hereafter related. The exceptions were argued on January 5, 1976, before the above three judges sitting as a court en banc. The case is now ready for disposition.

The primary issue is whether plaintiff, United Credit Corporation, is a holder in due course and, therefore, entitled to recover free and clear of any possible defenses of the maker of note, the defendant, Gerald Necamp.

On August 6, 1971, defendant executed this note payable 18 months after date, i.e., on February 6, 1973, at the First National Bank, Piscataway, N.J. The note was payable to the order of APF, Inc., a company engaged in the manufacture of picture frames.

Plaintiff is a lending institution known as a factoring finance company. On May 23, 1968, plaintiff and APF, Inc. executed a security agreement under which plaintiff was to lend APF, Inc. operat-

ing capital against the security of accounts receivable, notes, inventory, equipment and general tangibles. The security agreement provided that plaintiff would lend APF, Inc. an amount equal to 80 percent of the net security of the various assets in APF, Inc.'s possession.

At all relevant times, APF, Inc. maintained an open balance with plaintiff. When APF, Inc. made sales and created accounts receivable, it would pledge these accounts receivable to plaintiff and plaintiff, in turn, would advance APF, Inc. 80 percent of their value.

In January 1973, APF, Inc. had borrowed from plaintiff the maximum amount permitted by their security agreement, and it desired to be granted moneys above the 80 percent maximum. Plaintiff was agreeable to APF, Inc.'s request. However, it desired separate security for the additional sum and received from APF, Inc. defendant's note as collateral. Pursuant to this transaction, and upon receipt of the note, plaintiff loaned additional moneys to APF, Inc.

Defendant's promissory note was personally delivered by Max Munn, the President of APF, Inc., to Raymond Lewis, vice president of plaintiff. During the ensuing exchange, Mr. Lewis inquired whether the note was properly endorsed and if it was "all right," to which Mr. Munn replied in the affirmative.

Defendant's note had been stamped by APF, Inc. with the following endorsement:

"Pay to the order of any bank, banker or trust co. APF, Inc. 333"

Referring to that part of the endorsement which read "333," Mr. Lewis explained its meaning on direct examination at trial as follows:

"Q. Would you explain to the court exactly what 333 is?

"A. The nature of the finance factoring business is a confidential matter between the borrower and the lender. In many cases the borrower—in most cases the borrower does not want his account debtors or his suppliers to know that he is being factored or that he is discounting his note on accounts receivable and it is a common practice of factoring and finance companies in New York to be known at their own bank by a designated number or a symbol rather than having their own name appear on the check or note that is presented for payment.

"Q. Excuse me, who is United Credit's Bank in New York?

"A. Bankers Trust Company.

"Q. Is this a code that was given to United Credit by Bankers Trust?

"A. Yes.

"Q. Now, the nature of the banking industry as it is, is your code registered with the Federal Reserve Bank of New York?

"A. Yes."

On January 31, 1973, plaintiff presented the note to its bank, Bankers Trust Company, for collection from defendant. Subsequently, Bankers Trust Company returned the note to plaintiff marked "Protested" as it had been dishonored by defendant. Defendant in his pleadings here raised the purported defense of failure of consideration to the instrument.

Prior to the presentment and dishonor, plaintiff had not received any notice of dishonor, knew of no defense against the note, nor had it any knowledge

of any claim by defendant against the payee and endorser, APF, Inc.

There is no question but that the instant note, as originally executed, was a negotiable instrument. The writing satisfied all the requirements of article 3, sec. 3-104(1) of the Uniform Commercial Code of April 6, 1953, P.L. 3 (No. 1), effective July 1, 1954, 12A P.S. §3-104(1),[1] which provides as follows:

"Any writing to be a negotiable instrument within this Article must

"(a) be signed by the maker or drawer; and

"(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

"(c) be payable on demand at a definite time; and

"(d) be payable to order or to bearer."

As such, defendant must be held to have notice of' the possible consequences of the issuance of the writing. Nevertheless, defendant asserts that the subsequent endorsement of the note by APF, Inc. over to plaintiff was insufficient for the latter to obtain holder in due course status.

Article 1, sec. 1-201(20) of the U.C.C., supra, 12A P.S. §1-201(20), defines a "holder" as "a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank."

Article 3, sec. 3-302(1), of the U.C.C., supra, 12A P.S. §3-302(1), reads that: "A holder in due course

---

1. All statutory citations cited within are provisions of the Uniform Commercial Code as adopted in this Commonwealth. See Title 12A Purdon's Pa. Statutes Annot.

is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or any defense against or claim to it on the part of any person."

Article 3, section 3-305 of the U.C.C., supra, 12A P.S. §3-305, provides:

"To the extent that a holder is a holder in due course he takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt . . . [five exceptions stated here which are not applicable within]."

Under the instant facts, we have no difficulty in concluding that plaintiff was a holder within the meaning of the code. The note was endorsed over to it by means of its code number, "333" and the whole endorsement was effected by means of one integral stamp. Further, plaintiff being a "holder" under the code, there was nothing established at trial here to preclude it from rising to the status of holder in due course.

But defendant cites article 4, sec. 4-201(2) of the U.C.C., supra, 12A P.S. §4-201(2), in attempted support of his position. This subsection provides as follows:

"After an item has been indorsed with the words 'pay any bank' or the like, only a bank may acquire the rights of a holder

"(a) until the item has been returned to the customer initiating collection; or

"(b) until the item has been specially indorsed by a bank to a person who is not a bank."

Some light is shed upon the applicability of this section when it is read in connection with the official commentary, paragraph 7, which states, in pertinent part, the following:

"Sub-section (2) protects the ownership rights with respect to an item indorsed 'pay any bank or banker' or in similar terms of a customer initiating collection . . . in the event the item is subsequently acquired under improper circumstances by a person who is not a bank and transferred by that person to another person, whether or not a bank. Upon return to the customer initiating collection of an item so indorsed, the indorsement may be cancelled (Section 3-208)."

The practical effect of a "pay any bank" endorsement is to lock an instrument into the banking chain and to prevent any nonbank from acquiring any rights to the item, should it be lost or stolen. See 1 Hawkland, A Transactional Guide to the U.C.S. at page 424. All of this is simply to protect the owner of a negotiable instrument; it certainly does not detract from its rights.

Additionally, article 4, sec. 4-201(2), of the U.C.C., supra, 12A P.S. §4-201(2), should be read with subsection (1) of the same provision: 12A P.S. §4-201(1). This reads, in pertinent part, as follows:

"Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final . . . the bank is an agent or subagent of the owner of the item and any settlement for the item is provisional. This provision applies regardless of the form of indorsement or lack of indorsement and even though credit given for the item is subject to immediate withdrawal as of right or is in fact withdrawn; but the continuance of ownership of an item by its owner and any rights of the owner to proceeds of the item are subject to rights of a collecting bank such as those resulting from outstanding advances on the item and valid rights of setoff . . ."

Thus, there is a statutory presumption of law as well as a strong presumption of fact that collecting banks are only agents of the owner of an item. This has long been the law of this Commonwealth, even before the enactment of a code here: (cf. Lipschutz v. Phila. Savings Fund Society, 107 Pa. Superior Ct. 481, 164 Atl. 74 (1933)). See, also, First Trust and Savings Bank v. Fidelity-Philadelphia Trust Company, 214 F. 2d 320, cert. den., 348 U.S. 856, 75 S. Ct. 81 (1954), and is the established law elsewhere as well. See Pazol v. Citizens Natl. Bank, 138 S. E. 2d 442 (1964); Citizens Natl. Bank v. Fort Lee Savings and Loan Assn., 213 A. 2d 315 (1965); Plantations Bank v. Desormier, 232 A. 2d 371 (1967); 622 West 113th St. Corp. v. Chemical Bank New York Trust Company, 276 N.Y. Supp. 2d 85 (1966); Charter Bank v. American Trust Co., 272 N.Y. Supp. 2d 102 (1965); Cooper v. Union Bank, 507 P. 2d 609 (1973).

It is the law that whether a bank becomes an owner or an agent depends on the intention of the parties. See East Boston Coal Co. v. Luzerne Anthracite, Inc., 39 Luzerne 359 (1947). Here, the manifest intention of the parties was clear and did not rebut the agency presumption established by article 4, section 4-201, of the U.C.C., supra, 12A P.S. §4-201. The primary purpose of this section is to avoid litigation over questions of status of banks as owners or agents for collection and to make settlements provisional until banks have secured final settlement for instruments. See Pazol v. Citizens National Bank, supra, and the official commentary to the section.

Furthermore, even if it be assumed arguendo that the plaintiff lost its rights as a holder in due course when the instant note was transferred over to its bank for collection, nevertheless, by the ex-

press wording of article 4, sec. 4-201(2)(a), of the U.C.C., supra, 12A P.S. §4-201(2)(a), it regained its original rights when the item was returned to it from its bank marked "protested." Thus, even the statutory provision defendant cites does not support his ultimate position. Indeed, plaintiff could have even cancelled the "pay any bank" endorsement at that time. See article 3, sec. 3-208, of the U.C.C., supra, 12A P.S. §3-208.

Defendant also emphasizes that the "pay any bank" endorsement is restrictive in nature. See article 3, sec. 3-205(c) of the U.C.C., supra, 12A P.S. §3-205(c). However, this does not help defendant because article 3, sec. 3-206(1), of the U.C.C., supra, 12A P.S. §3-206(1), expressly states that "No restrictive indorsement prevents further transfer or negotiation of the instrument." This is a substantial change from the old Negotiable Instruments Law.

Restrictive endorsements have the same effect as an ordinary endorsement except that the words of restriction declare a trust: 24 Univ. of Pitt. L. Rev. 617 (1963). An endorsement "pay any bank" creates an agency in the bank to collect or, more accurately speaking, since a legal title is involved, it creates a trust in the bank to collect: 24 Univ. of Pitt. L. Rev. 627 (1963).

For the sum of the foregoing considerations, we rule that plaintiff is a holder in due course and entitled to recover on the instant note.

Defendant also objects to two of the rulings of the court at trial. Defendant had called Alfred Weintraub, Esq. (former counsel of defendant) to testify as to conversations with and a letter from Max

Munn of APF, Inc., both of which allegedly occurred in March of 1973. Defendant contends it was his intention to show that the moneys borrowed by APF, Inc. from plaintiff had, in fact, been repaid. Defendant simply asserts in this regard that because of these trial rulings his client was denied his day in court. The proffered evidence was clearly inadmissible, being self-serving declarations on behalf of APF, Inc. and hearsay: Commonwealth, to use of Roger E. Gerhart, Inc. v. Coopersmith Bros., Inc., 423 Pa. 608, 225 A. 2d 246 (1967); Dempsey v. Dobson, 174 Pa. 122, 132, 34 Atl. 459 (1896); England Estate, 55 D. & C. 2d 420, 424-26 (1971).

In accordance with the foregoing opinion, we enter the following

## ORDER

And now, February 25, 1976, the exceptions of defendant are dismissed in their entirety, the decision of the trial judge is affirmed in its entirety, and we direct the prothonotary to enter judgment in favor of plaintiff and against defendant in the sum of $7,000, and give notice thereof as required by Pa.R.C.P. 1038(e). Costs on defendant.