In the Matter of Nina MORSE, M. D. and Thomas Morse, Debtors.

GERMANTOWN SAVING BANK, Plaintiff,

v.

John HOLSTON, Trustee, Nina Morse, M. D. and Thomas Morse, General Motors Acceptance Corporation and Amica Mutual Insurance Company, Defendants.

Bankruptcy No. 80–0626.

United States Bankruptcy Court, D. New Jersey.

Feb. 19, 1981.

Archer, Greiner & Read by A. Fred Ruttenberg, Haddonfield, N. J., for plaintiff.

John S. Holston, Jr., Woodbury, N. J., Trustee.

Muller & Kancher by James L. Muller, Haddonfield, N. J., for debtor-defendants Nina Morse, M. D. and Thomas Morse.

Farr, Reifsteck, Wolf & Ware by David R. Lyons, Haddon Heights, N. J., for defendant General Motors Acceptance Corp.

Bleakly, Stockwell & Zink by William S. Zink, Camden, N. J., for defendant Amica Mut. Ins. Co.

## ON COMPLAINT TO DETERMINE OWNERSHIP OF FUNDS

### OPINION

AMEL STARK, Bankruptcy Judge.

On January 15, 1980, Nina Morse, M.D. and Thomas Morse, husband and wife filed Petition for Relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. An Order for Relief was entered on the same day. John Holton, Esquire was appointed interim Trustee by the United States Trustee on June 30, 1980.

On September 25, 1980, a Complaint was filed in this court by Germantown Savings Bank ("GSB") asserting ownership or right to payment arising out of a check (or draft) in the amount of $2,178.23 dated July 14,

1980. Defendants named in the Complaint were the maker of the check, Amica Mutual Insurance Company ("Amica") and the loss payees, Nine Morse, M.D. and Thomas Morse ("debtors") and General Motors Acceptance Corporation ("GMAC").

By Consent Order entered on December 9, 1980, it was stipulated that Judgment would be rendered by this court on the pleadings, Findings of Facts and Conclusions of Law submitted by Plaintiff GSB and defendant, GMAC.

## FINDINGS OF FACT

1. Prior to November 1, 1979, Nina Morse, M.D. and Thomas Morse presented to their automobile insurance carrier, Amica, a claim for accidental damages to the debtors' motor vehicle, the damages being in the sum of $2,378.23. GMAC held a perfected security interest in the motor vehicle and was a named loss payee under the Amica policy. On November 1, 1979, Amica issued check No. 1301046 in the amount of $2,378.23, naming the debtors and GMAC as loss payees.

2. The debtors' automobile insurance policy with Amica contained a "200.00 deductible" clause, permitting Amica to deduct that amount from any payment against the debtors' claim. Before payment was made on the check, Amica discovered that it had not deducted the sum of $200.00 and on November 7, 1979 it ordered the payor bank, Rhode Island Hospital Trust National Bank, to stop payment on check No. 1301046.

3. On or about November 16, 1979, after obtaining GMAC's endorsement, Nina Morse deposited check No. 1301046 in the sum of $2,378.23 into her account at GSB. The account was immediately credited with that amount.

4. Shortly thereafter, and prior to November 30, 1979, Nina Morse withdrew, along with other funds, the proceeds of the check. These funds were used to pay for the repair of the motor vehicle. Because of Amica's stop payment order, however, check No. 1301046 was returned "unpaid" to GSB on November 30, 1979.

5. On December 4, 1979, GSB made a proper but unsuccessful demand upon the debtors for repayment of $2,378.23, the amount credited from check No. 1301046. Restitution of the sum was not made by the debtors. Thereafter, although not noted in the briefs, Amica cancelled debtors' insurance policy. Subsequently, debtors vehicle was damaged in a second accident for which there was no insurance coverage.

6. As previously stated, the debtors filed Petition for Relief under Chapter 7 of the Bankruptcy Code on January 15, 1980.

7. Defendant Amica, in order to satisfy its then outstanding insurance claim liability, issued check No. 1499838 dated July 14, 1980, in the corrected amount of $2,178.23, naming again, the debtors and GMAC as loss payees. (Debtors' attorney, James L. Muller, Esquire, is in possession of this check.)

8. Neither the debtors nor their Trustee claim any interest in check No. 1499838. Defendant Amica, for its part, admits that check No. 1499838 or a replacement check or draft is payable to the successful party in the instant litigation.

9. In an effort to create a complete record, it is necessary to state that on or about November 29, 1979 Amica issued a check (No. 1301389) to the debtors and GMAC which was never cashed and upon which payment was stopped, for the reason that it had become a "dead check." All parties agree that this specific check is not claimed by either GSB or GMAC, having been replaced by check No. 1499838 in the sum of $2,178.23.

10. GSB contends that it is entitled to the proceeds of this final check for the reason that it has been given to replace the previous check which it, in good faith, and, it contends, in conformity with existing banking practices, credited to the debtors' account, thus enriching debtors' estate at its expense. GSB further contends that, sitting as a court of equity, the Bankruptcy Court should determine that it alone is entitled to the proceeds of the check, since, it argues, the proceeds of this check could not,

and, in fact, never became "property of the estate."

11. GMAC contends that it is entitled to the proceeds of the check because such proceeds are: (a) proceeds of the estate, (b) property of the Trustee; and, therefore (c) *its* property by reason of its security agreement and lien on debtors' motor vehicle, damaged as a result of the "second accident."

### CONCLUSIONS OF LAW

Subsection (a) of Section 541 of the Bankruptcy Code (11 U.S.C. section 541) reads:

541. Property of the estate.

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interest of the debtor in property· as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with spouse, or of an interlocutory or final divorce decree; or

(C) as beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

GMAC in its arguments and briefs contends that: (a) check No. 1499838; is property of the debtor estate as "proceeds" of *other* property of the debtor estate (i. e., the motor vehicle) in which the debtor had "legal or equitable interests"; and (b) since it is property of the estate, the lien of the security agreement attached to the proceeds of this check.

■ The legislative history of Section 541(a) of the Bankruptcy Code contradicts GMAC's contention, for it states in pertinent part:

"Though this paragraph will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." House Report No.95–595, 95th Cong. 1st Sess. (1977) 367–8; Senate Report No.95–989, 95th Cong. 2nd Sess. (1978) 82–3, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868.

This language clearly indicates that the drafters of the Bankruptcy Code did not intend to enlarge the debtor estate by granting rights which were nonexistent prior to bankruptcy.

It is the Court's opinion, therefore, that the check (and its underlying value) is not part of the debtors' estate within the contemplation of the Bankruptcy Code. It would take a novel twist of the law to permit GMAC (or the debtors for that mat-

ter) to realize twice on the same claim, for the payment was made as a result of the "first accident."

## II.

 The application of several principles of law and equity persuade the court that check No. 1301046 (and its underlying value) should be awarded to plaintiff GSB.

In *Laurel Bank & Trust Co. v. City National Bank of Conn.*, 33 Conn.Supp. 641, 365 A.2d 1222 (1976) the court recognized that Section 4–208 of the Uniform Commercial Code (substantially identical to *N.J.S.A.* 12A:4–208) recognized that a collecting bank is a holder in due course to the extent that credit is given. This court believes that such reasoning is sound and is applicable in the present case. To hold otherwise would defeat the intention of the draftees of the Uniform Commercial Code and would inhibit the commercially reasonable practice of extending pre-collection credit to retail bank customers. Furthermore, the Court notes that the equitable remedy of subrogation is the right to indemnification by a party who has paid an obligation of another. *Olin Corporation (Plastics Division) v. Workman's Compensation Appeal Board*, 14 Pa.Cmwlth. 603, 324 A.2d 813, 816 (1974). "The rights of a subrogee attach at the time the equities arise in his favor which ordinarily is at the time he assumes and pays the debt." *Schmid v. First Camden National Bank & Trust Co.*, 130 N.J.Eq. 254, 269, 22 A.?d 246 (1941). *See also Standard Accident Insurance Co., v. Pellechia*, 15 N.J. 162, 104 A.2d 288 (1954).

In New Jersey, a depository-collecting bank is a holder in due course of a subsequently dishonored instrument to the extent that it gave value. *Citizens National Bank of Englewood v. Fort Lee Savings & Loan Association*, 89 N.J.Super. 43, 213 A.2d 315 (1965). This measure of protection is both necessary and appropriate. Since defendant Amica is obligated to someone in the sum of $2,178.23, equity demands that the remedy of subrogation must inure to plaintiff GSB's benefit.

## CONCLUSION

Based upon the foregoing findings of fact and conclusions of law, the court orders that plaintiff GSB is entitled to: (a) possession of check No. 1301046 endorsed by the debtors and by GMAC: or (b) in the event that GSB is unable to collect the sum of $2,178.23 from check No. 1301046, for the reason that it has become "dead," Amica will issue a new check or draft in the amount of $2,178.23 payable solely to Germantown Savings Bank.

IT IS SO ORDERED. Let an Order in conformity with this Opinion be submitted by the attorney for the plaintiff.